## JONES NATIONAL BANK *v.* YATES.

## BANK OF STAPLEHURST *v.* SAME.

## UTICA BANK *v.* SAME.

## BAILEY *v.* SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF
NEBRASKA.

Nos. 163, 164, 165, 166. Argued April 5, 1915. Restored to docket for
reargument June 21, 1915. Reargued January 12, 13, 1916.—Decided
April 3, 1916.

Although plaintiff's petition does not refer in terms to a Federal
statute which determines defendant's liability, if it appears that the
case made is essentially one governed by that statute, the action
inherently involves the Federal question of liability under the
statute.

Even though the defendant in such a case may have averred in his
answer that his liability, if any, must be determined under that
statute, that assertion is simply a contention as to essential elements
of the plaintiff's claim, and where the State court has denied liability
under the Federal statute this court has jurisdiction to review the
judgment of the state court under § 237, Jud. Code.

Under the local practice in Nebraska, where trial by jury is waived in
an action at law, the findings made by the trial court have the
same force and effect as the verdict of a jury, and the hearing in the
Supreme Court is not a trial *de novo;* and where the judgment of
that court, reversing a judgment of the trial court in favor of
the plaintiff, is upon the ground that the plaintiff's case is legally
insufficient under the Federal statute, the questions in this court are
whether the findings of the trial court were supported by substantial
evidence and justified recovery under the Federal statute.

The trial court, having found that defendants had knowingly made
false statements as to the condition of a national bank of which
they were directors, and that plaintiffs were entitled to recover from
defendants their losses by reason of their reliance thereon, this
court reverses the Supreme Court of the State and affirms the judg-

ment of the trial court; and *held*, that plaintiffs, as creditors of a national bank, may recover from those directors who knowingly made statements required by the National Bank Act that were false or who knowingly permitted, assented to and allowed the same to be made and published; and also *held* that in this case the findings of the trial court as to the condition of the bank and the knowledge by the defendant directors of the falsity of the statements made and published under the Federal statute, and the reliance thereon by the plaintiffs, were supported by substantial evidence.

93 Nebraska, 121, reversed.

THE facts, which involve the right of creditors of a national bank to recover their loss from the directors of the bank, are stated in the opinion.

*Mr. J. J. Thomas*, with whom *Mr. L. C. Burr* and *Mr. A. B. Hayes* were on the brief for plaintiffs in error.

*Mr. Halleck F. Rose* and *Mr. Frank E. Bishop*, with whom *Mr. Frank M. Hall, Mr. Joseph F. Stout* and *Mr. Arthur R. Wells* were on the brief, for defendants in error:

The findings of the state court are not subject to review in this court. *Dower* v. *Richards,* 151 U. S. 658; *Miedreich* v. *Lauenstein,* 232 U. S. 236.

The printed bill of exceptions does not contain all of the evidence and cannot be reëxamined to change the findings of fact. *Yates* v. *Jones National Bank*, 206 U. S. 158; *Kansas City R. R.* v. *Albers Co.*, 223 U. S. 573; *Creswell* v. *Knights*, 225 U. S. 246; *So. Pac. Co.* v. *Schuyler,* 227 U. S. 601; *Carlson* v. *Curtiss*, 234 U. S. 103; *United States* v. *Copper Co.*, 185 U. S. 495; *Kinney* v. *United States Co.*, 222 U. S. 283; *Grand Trunk Ry.* v. *Cummings,* 106 U. S. 283.

The judgment of the state Supreme Court upon the vote of the four judges does not deny the plaintiffs any Federal right and the motion for rehearing with only three judges in its favor must fail for lack of majority of the court and is not reviewable in this court. *Shumway*

v. *State*, 82 Nebraska, 152; *Consolidated Co.* v. *Norfolk*, 228 U. S. 230; *Iowa Central R. R.* v. *Iowa*, 160 U. S. 389; *West* v. *Louisiana*, 194 U. S. 258; *King* v. *West Virginia*, 216 U. S. 92; *Carmichael* v. *Eberle*, 177 U. S. 63.

The petitions do not state a cause of action against the defendants. *Yates* v. *Jones National Bank*, 206 U. S. 158.

Revised Stat., § 5239, requires a knowing violation of its provision in order to establish liability. *McDonald* v. *Williams*, 174 U. S. 397; *Potter* v. *Hill*, 155 Missouri, 232; *Utely* v. *Hill*, 155 Missouri, 232; *Mason* v. *Moore*, 79 N. E. Rep. 932; *Spurr* v. *United States*, 161 U. S. 728; *Rosen* v. *United States*, 161 U. S. 29; *South-Company* v. *Silva*, 125 U. S. 247; *Thomas* v. *Taylor*, 224 U. S. 73.

The directors of a national bank are not obliged to manage or to administer its affairs, and are not responsible for the acts of its officers and agents which they did not knowingly participate in or assent to. *Briggs* v. *Spaulding*, 141 U. S. at 162.

The director does not attest the official report at his risk of its being false. He is not responsible without knowledge of its falsity. *Yates* v. *Jones Bank*, 206 U. S. 179; *Briggs* v. *Spaulding*, 141 U. S. 147.

The Nebraska Supreme Court correctly understood and applied the rule of liability of directors derived from the National Bank Act to the evidence. *Yates* v. *Jones Bank*, 93 Nebraska, 121.

Mr. Justice Hughes delivered the opinion of the court.

The Capital National Bank of Lincoln, Nebraska, suspended payment on January 21, 1893. The plaintiffs in error were unpaid depositors and brought these actions against directors of the bank to recover damages attributed to false representations of the bank's condition. With their denials of breach of duty, the defendants averred that their liability, if any, was to be determined

by the provisions of the National Bank Act... Judgment
in favor of the plaintiffs, upon the verdict of a jury, was
affirmed by the Supreme Court of the State. *Yates* v.
*Jones National Bank*, 74 Nebraska, 734. It was held
that the actions were for deceit, at common law, and the
judgments were sustained upon that ground. Upon writ
of error the judgments were reversed. 206 U. S. 158, 181.
It was the view of the court, even if it were conceded "that
there was some evidence tending to show the making of
alleged written representations other than those con-
tained in the official reports made by the association to
the Comptroller of the Currency, and published in con-
formity to the National Bank Act, that such latter state-
ments were counted upon in the amended petition and
were, if not exclusively, certainly principally, the grounds
of the alleged false representations covered by the proof."
*Id.*, p. 171. It was therefore concluded that the recovery
had been based upon conduct of the defendants in the
discharge of duties imposed by the Federal statute; that,
with respect to such conduct, the statute (Rev. Stat.,
§ 5239) furnished an exclusive test of liability; and that
this test had not been applied. It was held that respon-
sibility, by the terms of the statute, arose from its viola-
tion 'knowingly' and hence that 'something more than
negligence is required, that is, that the violation must in
effect be intentional.' *Id.*, pp. 179, 180.

Upon remand, the petitions were amended but there
was no material change in the nature of the causes of
action. By agreement, the several cases were tried to-
gether; and trial was had by the court without a jury.
Official reports, as published, of the condition of the bank
were introduced in evidence. Two of these (of Decem-
ber 28, 1886, and December 9, 1892) had been annexed to
the petition, and the allegations were broad enough to
embrace others. It appeared that the official reports of
December 28, 1886, December 12, 1888, September 30,

1889, July 9, 1891, December 2, 1891, and December 9, 1892, had been attested by the defendant Yates; those of September 25, 1891, and September 30, 1892, by Ellis P. Hamer, the intestate of the defendant, Louisa Hamer; and those of December 28, 1886, August 1, 1887, October 2, 1890, December 19, 1890, and July 9, 1891, by the defendant, David E. Thompson. Each of these statements showed the capital stock intact and also surplus and undivided profits.

On behalf of the defendants, Yates and Hamer, the following special findings among others were requested:

"III. That neither the defendant Charles E. Yates nor Ellis P. Hamer, the deceased, knowingly violated or knowingly permitted any of the officers, agents or servants of the Capital National Bank to violate any of the provisions of the national banking act under which said Bank operated.

"IV. That neither the defendant Charles E. Yates nor the deceased, Ellis P. Hamer, knowingly participated in or assented to any violation of any of the provisions of said national banking act by any of the officers, agents or servants of said Capital National Bank.

"IX. That the defendant Charles E. Yates, in attesting said reports of date December 28, 1886, and December 9, 1892, did not with actual knowledge thereof or intentionally, make an untrue statement or representation of the assets or liabilities of said Capital National Bank, nor of any of the items of either its assets or liabilities.

"X. That neither the defendant Charles E. Yates nor the deceased Ellis P. Hamer, with actual knowledge or intentionally made any untrue statement or representation of any or all of the assets of the Capital National Bank in any or all of the statements or reports made to the Comptroller of the Currency and published by said Bank as required by the national banking act, which reports are shown in the testimony in this case."

The trial court found "against each of the defendants and in favor of the plaintiff" respecting the third and fourth requests. On the ninth request, the court answered "in the negative" as to the report of December 28, 1886, and "in the affirmative" as to the report of December 9, 1892; and on the tenth request, the court found "in the affirmative." These rulings 'in the affirmative' were taken to be findings against these defendants, each of whom at once (on a motion to set aside the findings and for a new trial) filed exceptions,—the defendant Yates stating that the court "erred in finding against defendant on the ninth request as to report Dec. 9, 1892," and each of the defendants, Yates and Hamer, stating that the court "erred in finding against defendant on the tenth request."

Among the requests for findings submitted by the defendant Thompson were the following:

"4. Whether this defendant at any time prior to its failure or suspension had actual personal knowledge that any of the official statements made by the Capital National Bank to the Comptroller of the Currency and referred to in the petition or the evidence were in any material respect false and untrue.

"5. Whether this defendant in fact participated in any of the official reports made by the Capital National Bank to the Comptroller of the Currency other than the five several reports dated respectively, December 28, 1886, August 1, 1887, October 2, 1890, and December 19, 1890, and July 9, 1891.

"6. Whether in attesting such of the official reports of the Capital National Bank to the Comptroller of the Currency as are shown to have been attested by him, the defendant acted in good faith.

"7. Whether in attesting such of the official reports of the Capital National Bank to the Comptroller of the Currency as are shown to have been attested by him, the defendant acted fraudulently and with actual personal

knowledge that such reports or any one of them were in any material respect false and untrue.".

As to the fourth request, the trial court found "in the affirmative," and the defendant Thompson filed his objection that the finding was "not sustained by sufficient evidence" and was "not consistent with the findings made in response to the sixth and seventh requests." As to the fifth request the trial court found "that the defendant attested only five reports mentioned in said request." As to the sixth and seventh requests, it was found:

"Respecting the sixth and seventh requests of the defendant the Court finds that the defendant had no actual personal knowledge of the truth or falsity of the reports made to the Comptroller, attested by him, but·in attesting such reports the Court finds that the defendant relied upon the statements made to him by the president and cashier of the bank, and without any investigation, and that at the time of attesting such statements the defendant knew that he had no personal knowledge of the truth or falsity of such reports and that the same were attested recklessly and without performing his duties as a director to ascertain the truth or falsity of such reports before the same were attested by him, and in this respect the Court finds that the same were not made in good faith."

The trial court upon its own motion found in each case, as to all the defendants, as follows:

."The Capital National Bank, at the time it assumed that name and at the time it increased its capital stock to $300,000 had sustained losses greatly in excess of its purported capital stock, and that it never, in fact, had any capital stock, undivided profits, or surplus and that it was at all times insolvent and so continued up to the time it ceased to do business, on January 21, 1893, at which time its liabilities exceeded its assets by more than a million dollars.

"The Court finds that from and after September, 1891, the said Ellis P. Hamer, and the defendants Yates and Thompson, and each of them had knowledge and knew that the statements, advertisements and representations of the bank's financial condition and capital stock, both official and unofficial and voluntary shown by the evidence were being published in the newspapers and sent to the plaintiff, by the officers of the bank, as alleged in the amended petition and that they contained the names of all the directors including said Ellis P.. Hamer, and the defendants Yates and Thompson, and purported to be made and published under and by their authority, in their names and with their sanction and consent.

"The Court further finds that the said Ellis P. Hamer, and the defendants, Yates and Thompson, and each of them, from and after September, 1891, had knowledge and knew said statements, representations and advertisements aforesaid, contained material false representations of the financial condition of said bank, and were in fact false and untrue, as in plaintiff's amended petition alleged, and with knowledge of all of the matters and facts aforesaid they and each of them, knowingly permitted, assented to and allowed the same to be made, published, advertised, and sent to plaintiff, as aforesaid as in the amended petition alleged. That said statements and advertisements aforesaid showed and represented the bank to be in a sound, solvent and prosperous financial condition when in fact it was at all times wholly insolvent and unable to pay its liabilities."

It was further found "that the allegations of plaintiff's amended petition are true." The trial court, as to each of the defendants, also set forth its conclusion that the plaintiffs were entitled to recover "in an action of deceit under the principles of the common law exclusive of the requirements of the national banking act," and fixed the damages sustained. Motion for a new trial was denied.

Upon appeal, the judgments in the several cases were reversed by the Supreme Court of the State, and the actions were dismissed.  93 Nebraska, 121.  The appeals were heard by six judges, two of whom dissented from the conclusion reached.  Three judges concurred in one opinion (delivered by Hamer, J.), taking the view that the amended petitions contained "no material additional statement of facts," that they "still charge the defendants with making false statements to the Comptroller of the Currency as to the condition of the Capital National Bank, and this is the main foundation or basis for recovery," and that the plaintiffs "having failed to allege and prove that the defendants personally knew of, or personally participated in, the acts of the officers of the bank of which they now complain," were not entitled to recover under the decision of this court as to the rule of liability established by the Federal Act.  *Id.,* pp. 123, 130.  The remaining judge (Letton, J.), whose concurrence was essential to the reversal, stated his views in a separate opinion.  After pointing out that the issues were the same as when the case was presented to this court on the former writ of error, and that this court had held that a Federal question was involved, he said:

"I agree with the former judgment of this court and that of the several inferior federal tribunals before which the question was presented that the petitions state a cause of action at common law for deceit, but think this court is bound by the opinion of the Supreme Court of the United States.  I am also inclined to the view that the evidence would support a judgment upon such a theory of the case. The findings of the district court are to that effect.  I am not satisfied they are unsustained by the evidence.  The presumption is that they are so sustained; but I have not examined the evidence so critically as would be necessary to determine this, for the reason that, under the holding of the Supreme Court of the United States as to the meas-

ure of duty and of liability of directors under the banking
laws of the United States, I think a case has not been
made. For that reason alone, I concur in the conclusion."
*Id.*, p. 131.

The appellees moved for a rehearing contending, in part,
that the court had erred in denying to them "the right to
recover under the national bank laws." On this motion
the court was equally divided and the motion was denied.
And these writs of error to review the judgments of re-
versal and dismissal have been prosecuted.

1. It is insisted that the writs should be dismissed in the
view that the plaintiffs in error sought to enforce liability
upon non-Federal grounds and that the Federal question
was raised exclusively by the defendants in error. But this
objection ignores the nature of the plaintiffs' case. The
fact that their petitions did not refer, in terms, to the
Federal statute is not controlling. *Thomas* v. *Taylor*, 224
U. S. 73, 78, 79; *Grand Trunk Rwy.* v. *Lindsay*, 233 U. S.
42, 48. It was alleged that statements published by the
defendants, acting as directors and officers of the bank,
with respect to its financial condition, were false, and were
known to be false, and were made with intent to deceive
plaintiffs and others. Two of these statements—official
reports formally attested—were, as we have said, an-
nexed to the petitions. The proof of representations
chiefly concerned these reports and others of a similar
sort. In contemplation of law, the question upon the case
made by the plaintiffs was essentially one as to the liability
of these directors for conduct governed by the Federal
Act. The conclusion of the trial court that there could be a
recovery at common law, independent of the Federal
statute, did not alter the inherent character of the actions.
Recognizing that these must be deemed to rest upon
transactions falling within the purview of that statute,
and that the plaintiffs' rights must be measured accord-
ingly, the Supreme Court of the State reversed the judg-

ments and dismissed the actions. Although the defendants alleged in their answers that if any liability attached to them as directors it was determined by the Federal Act, the construction of which was necessarily involved, this was not properly speaking a matter of affirmative defence. What is called the defendants' assertion of Federal right was simply their contention as to the essential elements of the plaintiffs' cause of action. In *Thomas* v. *Taylor, supra,* the case was framed in deceit under the common law, but the appellate courts of the State decided "that it was the facts pleaded and not the technical designation of the action which constituted grounds of recovery." We accepted that decision, saying: "There is nothing in the national banking laws which preclude such view. Those laws are not concerned with the form of pleadings. They only require that the rule of responsibility declared by them shall be satisfied." If the plaintiffs' cause of action required the application of the Federal statute in defining the liability of these directors with respect to the acts alleged and proved, the plaintiffs were entitled to its correct application. Their case, as made by their pleadings and proofs, is not to be treated as of one character for the purpose of dismissing it in the state court and as of another sort for the purpose of denying their right to complain of the dismissal. We conclude that this court has jurisdiction.

2. It is apparent that there were no findings of fact by the Supreme Court of the State. The actions being at law and trial by jury being waived, the findings of fact made by the trial court—as we understand the local practice—had "the same force and effect" as the verdict of a jury. *Citizens Ins. Co.* v. *Herpolsheimer,* 77 Nebraska, 232; *Dorsey* v. *Wellman,* 85 Nebraska, 262; *Darr* v. *Hay Co.,* 85 Nebraska, 665; *Madison Bank* v. *Gross,* 98 Nebraska, 684. It was not a case of a trial *de novo* upon appeal as in an equity suit. *First National Bank* v. *Craw-*

*ford,* 78 Nebraska, 665. But, apart from these consider-
ations, findings of fact by the Supreme Court would neces-
sarily require the action of a majority of that court, and it
is plain that the opinion of the three judges, unaided by
the concurrence of the fourth, could not be regarded as
embodying such findings. Justice Letton, whose concur-
rence in the result made the reversal possible, stated
specifically the sole ground of his action, and his statement
did not purport to be the resolving of questions of fact.
After saying that he was inclined to the view that the
evidence would support a judgment upon a cause of action
at common law for deceit, and that "the findings of the
district court" were "to that effect," he added that he
was not satisfied that these findings were "unsustained by
the evidence." He considered the presumption to be
that they were "so sustained," but he had "not examined
the evidence so critically as would be necessary to de-
termine this," for the reason that in view of the holding
of this court "as to the measure of duty and of liability
of directors" under the Federal Act he thought that "a
case had not been made." "For that reason alone" he
concurred in the conclusion.

It is manifest that this was simply the expression of an
opinion with respect to the legal sufficiency of the plain-
tiffs' case. That is, the decisive ruling—upon which the
reversal rested—was that as matter of law, applying the
Federal statute, the plaintiffs were not entitled to their
recovery. And the judgment as entered upon appeal
simply set forth that the court finding "error apparent in
the record of the proceedings and judgment" reversed and
dismissed.

In this state of the record, for the purpose of determining
whether in thus reversing the judgments and depriving
the plaintiffs of their recovery, the Federal question
was wrongly decided, there are two questions to be con-
sidered (a) whether the facts found by the trial court

justified a recovery under the Federal law, and, if so, (b) whether there was substantial evidence to support these findings, as the duty to decide the Federal question in its very nature involves this further inquiry. *Dower* v. *Richards*, 151 U. S. 658, 667; *Stanley* v. *Schwalby*, 162 U. S. 255, 277, 278; *Kansas City Southern Rwy. Co.* v. *Albers Commission Co.*, 223 U. S. 573, 591, 592; *Creswill* v. *Knights of Pythias*, 225 U. S. 246, 261; *Southern Pacific Co.* v. *Schuyler*, 227 U. S. 601, 611; *North Carolina R. R.* v. *Zachary*, 232 U. S. 248, 259; *Carlson* v. *Curtiss*, 234 U. S. 103, 106.

3. In addition to the general finding in each case that the allegations of plaintiffs' amended petition were true, we have noted that the court found specially that the bank had sustained losses greatly in excess of its purported capital stock; that it never "had any capital stock, undivided profits or surplus"; that it "was at all times insolvent and so continued up to the time it ceased to do business on January 21, 1893", when "its liabilities exceeded its assets by more than a million dollars;" and that the published statements shown by the evidence, embracing the official reports to which reference has been made, represented the bank to be "in a sound, solvent and prosperous financial condition" when in fact it was "wholly insolvent and unable to pay its liabilities." The official reports covered by the findings were those made to the Comptroller of the Currency and published at the times we have mentioned in pursuance of Rev. Stat., § 5211.[1]

---

[1] "Sec. 5211. Every association shall make to the Comptroller of the Currency not less than five reports during each year, according to the form which may be prescribed by him, verified by the oath or affirmation of the president or cashier of such association, and attested by the signature of at least three of the directors. Each such report shall exhibit, in detail and under appropriate heads, the resources and liabilities of the association at the close of business on any past day by him specified; and shall be transmitted to the Comptroller within five

While, as pointed out on the former writ of error, the act did not expressly require that these reports "should contain a true statement of the condition of the association," yet "by necessary implication, such is the character of the statement required to be made, and by the like implication the making and publishing of a false report is prohibited." 206 U. S., p. 177. And as it is plain that the making of these official reports, found to be false, was a violation of the statute, the question is whether the findings make a case within § 5239 of the Revised Statutes, which provides that where the statute is "knowingly" violated or is "knowingly" permitted to be violated, as stated, "every director who participated in or assented to" such violation shall be liable individually for all damages thereby sustained by "the association, its shareholders, or any other person,"—a civil liability which may be enforced in the state court. *Id.*, pp. 180, 181.

As to the directors Yates and Hamer (the former having attested an official report to the Comptroller of the Currency as late as December 9, 1892, and the latter having attested an official report of September 30, 1892), the trial court not only found "against each of the defendants and in favor of the plaintiff" upon the special requests for findings that these directors did not knowingly participate in the violation of the act, but the trial court also found explicitly that each of these directors "from

---

days after the receipt of a request or requisition therefor from him, and in the same form in which it is made to the Comptroller shall be published in a newspaper published in the place where such association is established, or if there is no newspaper in the place, then in the one published nearest thereto in the same county, at the expense of the association; and such proof of publication shall be furnished as may be required by the Comptroller. The Comptroller shall also have power to call for special reports from any particular association whenever in his judgment the same are necessary in order to a full and complete knowledge of its condition."

and after September, 1891" knew that the official statements as to the bank's financial condition which were shown by the evidence to have been published "contained material false representations of the financial condition of said bank, and were in fact false and untrue," and that these directors with knowledge "of all the matters and facts aforesaid" had "knowingly permitted, assented to, and allowed the same" to be made and published. The findings as to each of these directors abundantly supported the plaintiffs' recovery within the established rule of liability.

With respect to the defendant Thompson (the latest official report attested by him being the one of July 9, 1891), we have seen that the court found that he had "no actual personal knowledge of the truth or falsity" of the reports which he attested, but that in attesting them he "relied upon the statements made to him by the president and cashier" of the bank "without any investigation," and that "at the time of attesting such statements" he "knew that he had no personal knowledge" of their truth or falsity, and that they "were attested recklessly and without performing his duties as a director" to ascertain their truth or falsity before attestation, and in this respect that these reports "were not made in good faith." If this finding, fairly construed, did not import more than mere neglect or inattention, it would not be sufficient to sustain a recovery; for Congress did not make negligence the test of liability, but the fact that the act was violated knowingly, although there may be a violation "in effect intentional," and therefore within the statute, "when one deliberately refuses to examine that which it is his duty to examine." *Thomas* v. *Taylor, supra.* In that case the directors, having been warned by the bank examiner and Comptroller of the doubtful character of certain assets, still represented them to be good; and their reckless report in disregard of the official direction was found to have the

quality of an intentional breach of the defined duty. But in the present case, we are not called upon to determine what should be deemed to be involved in the finding that the attestation of the earlier reports, which were attested by this defendant, was made "without any investigation" and "recklessly." For there were later reports made on behalf of the bank and the defendant is not excused simply by the fact that he did not attest them. His liability was not merely with respect to attestation, but for knowingly "participating in" or "assenting to" the violation of the Act. 206 U. S., pp. 177–179. If the defendant Thompson participated in or assented to the making and publication of the official reports to the Comptroller of the Currency, which were made in the year 1892, knowing that they were false reports, he was liable to the plaintiffs deceived and damaged thereby under the express terms of the statute; and he could not escape this liability simply because, while he thus participated or assented, other directors gave the formal attestation. And the trial court found, not only with respect to Yates and Hamer, but as to the defendant Thompson, that each of them after September, 1891, knew that the official statements as to the condition of the bank, shown by the evidence, were in fact false, and that with knowledge of the facts stated in the findings with respect to the condition of the bank, the defendant Thompson, as well as the others, "knowingly permitted, assented to, and allowed" the same to be made and published. This was a sufficient finding of the ultimate fact of participation or assent, and constituted an adequate basis for recovery.

We conclude that the findings of the trial court, in the light of the Federal statute, supported the judgments it entered.

4. The plaintiffs in error, however, are not entitled to complain of the reversal as a denial of Federal right, even though the judgments were supported by the findings of

fact made by the trial court, if these findings themselves were not supported by substantial evidence.

As to the financial condition of the bank, there is no room for controversy. It would be difficult to conceive of a case of more-scandalous maladministration than that whicn the testimony portrays. There was evidence of manipulation of accounts, of fictitious and falsified entries, of fraudulent concealments. It cannot be said that there was serious effort to meet this evidence. There was no attempt to palliate the offences which it appeared had been committed by the executive officers in the conduct of the bank's affairs. But these directors were not accountants; presumably they relied upon the books as containing accurate items, and there is no basis for the conclusion that they had knowledge of fictitious or falsified entries in the books, or of the fraudulent transactions which such entries were intended to conceal and which were revealed after the bank failed. With respect to such concealed transactions, we find nothing to show that the directors knowingly participated in, or assented to, a violation of the statute.

We pass, therefore, to matters of a different sort which lay easily within the ken of the directors. The bank had been incorporated as the Marsh National Bank, in the year 1883, with a capital stock of $100,000. The assets and liabilities of a preceding concern, Marsh Brothers, Mosher & Company, were transferred to the bank and became its assets and liabilities. In 1884, the name was changed to the Capital National Bank of Lincoln; the capital stock was then increased to $200,000, and in 1886 there was a further increase making the total capital stock $300,000. Yates, Hamer and Thompson became directors in 1884 and continued as such until the failure of the bank in January, 1893. There were seven directors in all, including C. W. Mosher, the president. It appears that, at the time of the failure, the bank's assets at their face

value, as shown by the books, were about $1,031,000. The liabilities, as shown by the books, including capital stock, amounted to about $1,017,000; these seem to have been in fact (including liabilities on rediscounts) about $1,760,000. Included in the assets above stated, the amount of $850,959.86 (in face value) was in bills receivable, of which $155,560.84 were classed by the receiver as doubtful and $397,073.63 as worthless. The actual showing on liquidation appears to have been even worse; the total amount realized from the bills receivable (aggregating $850,959.86) was $229,520.82, and the total amount realized from all the assets of the bank (including rediscounted items placed in the hands of the receiver for collection, and excluding stock assessments) seems to have been less than $400,000.

The evidence was that at the time of the failure there were on hand worthless notes of C. W. Mosher, the president, amounting to $85,281.67; of the cashier, R. C. Outcalt, $54,166.96 (less an offset of $570.99); and of the Western Manufacturing Company (signed by E. Hurlburt, Jr., Manager) $235,000. This concern was apparently but another name for C. W. Mosher; the testimony is that it had no assets and ceased to do an active business in 1889. There were also notes in the name of E. W. Mosher aggregating $107,085.45, which it was testified were worthless, save for a collection on collateral of less than $10,000. According to the schedules in evidence these worthless notes had been taken since June 1, 1892, that is, within a period of seven months before the failure. And while the totals of these accounts, respectively, were much larger than they had been formerly, the same accounts embracing loans to a considerable amount had long been carried and were included in the published reports. There was evidence that there had been about $200,000 of worthless notes in these accounts in January, 1892. While it is not necessary for the present purpose to

go further back, the testimony supports the finding of the trial court that the bank in fact not only had no surplus or undivided profits, but that its actual condition was one of insolvency.

In the fourteen months before the failure the evidence shows three of the official reports made to the Comptroller of the Currency and published in the newspapers in Lincoln; those of December 2, 1891, September 30, 1892, and December 9, 1892. The total resources in these reports are stated, respectively, as $1,143,946.88, $1,033,561.11, and $1,074,867.37. Each of these reports shows the capital stock unimpaired. As of December 2, 1891, the surplus is stated to be $32,000, and the undivided profits, $23,276.89; as of September 30, 1892, these items are $6,000 and $11,978, respectively; and as of December 9, 1892, $6,000 and $21,180.75. In January, 1892, the directors declared a dividend of five per cent, and in July, 1892, a further dividend of four per cent. There was evidence of serious discrepancies between the items in the published official reports and corresponding items as shown by the books. Without attempting to state the details disclosed by the voluminous record, it is sufficient to say that it was clearly shown by evidence substantially undisputed that these reports constituted grossly false representations of the bank's financial condition upon which the plaintiffs were invited to rely and did rely.

There was also substantial basis for the finding that the directors assented to the making and publication of these reports; for, as we have said, whether this or that director attested a particular report is not controlling upon the question of assent. The official reports required by law are the reports of the bank and not simply of those signing and attesting. As the reports of the bank, they are made under its authority and presumably with the assent of the board of directors. Taking the proved circumstances into consideration, and particularly in the light of the

activity of these directors, to which we shall presently refer, it is hardly conceivable that they did not know of the last-mentioned official reports which were made on behalf of the bank and published in Lincoln. Certainly, the fact of such knowledge on the part of each of them could properly be found. There is no suggestion that they made the slightest objection to the making or publication of these reports and the evidence was unquestionably sufficient to show their assent to this action on behalf of the bank.

The remaining question is with respect to the evidence of the knowledge of these directors of the falsity of these official reports or of such reckless disregard of the truth or falsity of their contents, as would show that the participation in, or assent to, the violation of the statute was "in effect intentional." Under date of September 8, 1891, the Comptroller of the Currency addressed a letter to president Mosher referring to a report of an examination of the bank and criticizing various matters. It was evidently in view of this communication that the trial court took September, 1891, as the time after which the directors had knowledge of facts showing the falsity of the reports. Without reciting the letter in full, it is sufficient to note that the Comptroller called attention to two loans (one being that of E. W. Mosher) exceeding the statutory limit; to the fact that at the time of the last report of the bank the overdrafts shown by the books largely exceeded those stated in the report; to overdue paper, with the statement that such of it as was good should be collected or made active by renewal with satisfactory security; to the excess of current expenses over undivided profits; and to the fact that the bank had a large liability on account of rediscounted paper, said to be caused by the falling off in deposits. It was suggested that some of the loans should be called in as soon as practicable, and the letter closed with the statement that

according to the examiner's report the board of directors had held only two meetings during the past year and that there was "no record of their having examined or approved of the loans and discounts." It was pointed out "that the conduct of affairs of a national bank is by law devolved upon the board of directors and that regular and frequent meetings are therefore very desirable." The defendants insist that they were not apprised of this letter until after the failure. There was evidence tending to show that it was considered at a meeting of the board in September, 1891, but in addition to explicit denials there was testimony to impeach the credit of the witness so testifying. There was, however, another letter from the Comptroller of the Currency under date of February 16, 1892, which admittedly was brought to the attention of the directors. This letter, in substance, repeated several of the criticisms which had been made in the earlier letter; it referred to the desirability of collecting as soon as practicable loans that had been carried for a number of years, and to the agreement of Mosher and Outcalt to reduce their liabilities and to close "the bulk of their outside interests" owing to which the business of the bank had suffered; it again emphasized the duty of the directors with respect to the conduct of the bank's affairs; and it concluded with a request for a reply over the directors' "individual signatures." The directors, including those whose liability is now in question, accordingly signed a reply, under date of February 19, 1892, which purported to furnish explanations and promised improvement. It was stated that the bank had always had a discount committee and that a vacancy caused by the death of a former member had been filled by the appointment of E. P. Hamer. The last-mentioned director also wrote to the Comptroller on February 23, 1892, to the effect that the manner of conducting the bank had not been satisfactory to him and, promising better man-

agement, he added: "Your letter is a move in the right direction, it indicates that we the directors should take a more positive position in the management which I for one shall do."

Apparently the Comptroller of the Currency was not satisfied. For it appears that he wrote another letter under date of August 31, 1892, which, having been lost, was not introduced in evidence. But the letter in reply, which the directors, including Yates, Hamer and Thompson signed individually (under date of September 19, 1892, as stated by defendants' counsel), is in evidence and its significance cannot be overlooked. Among other things, it stated:

"The dividend of July 1st was all right; the expenses since then have exceeded income by reason of having paid taxes & interest on certificates of deposits to an unexpected amount during July. The item of $8,000.00 losses referred to was an estimate of contingent losses & not any particular loss already incurred, but referred to some matters or process of liquidation, all items mentioned by you shall receive prompt attention."

There was thus sufficient evidence from these directors themselves that they were scrutinizing the affairs of the bank; that prior to the published official report of September 30, 1892, which was followed by the published official report of December 9, 1892, these directors were examining the condition of the bank, that they were considering the losses sustained, the expenses incurred, and the basis of the dividend declared in July. These were not casual statements, but deliberate assertions of activity of supervision in response to official complaint. It was plainly permissible, despite their disclaimers and denials, to attribute to these directors the knowledge which men of ordinary intelligence would readily have obtained with respect to the financial condition of the bank in the course of the supervision which they pro-

fessed to be actively exercising. Assuming that they were ignorant of the frauds that had been committed and concealed by falsified entries, there was warrant for the conclusion that they could not have failed to acquire sufficient information to be aware that the representations in the official reports of the latter part of the year 1892 were materially false and calculated to deceive. The questions of fact, so far as they arose upon a substantial conflict in evidence, were for the trial court. *Citizens Ins. Co.* v. *Herpolsheimer, supra; Madison Bank* v. *Gross, supra.* It is not necessary for us to review the evidence in detail. It is sufficient to say that our examination of it has convinced us that the findings of the trial court, at least with respect to the last mentioned reports, had substantial support; and, in this view, we must conclude that the reversal of the judgments, as entered in the trial court, upon the ground of the legal insufficiency of the plaintiffs' case when tested by the Federal statute, was error.

The judgments of the Supreme Court of the State are reversed and the cases are remanded with instructions to reinstate the judgments entered in the District Court which are affirmed. *Stanley* v. *Schwalby,* 162 U. S. 255, 279–283.

*It is so ordered.*