### DUDLEY v. HAWKINS et al.

(District Court, S. D. Georgia, W. D.    February 3, 1917.)

1. COURTS ⬤⟳269—FEDERAL COURTS—DISTRICT IN WHICH SUIT MUST BE BROUGHT—DEFENDANTS IN DIFFERENT DISTRICTS.

   A suit for joint negligence and misconduct of national bank directors, being of a transitory nature, under Judiciary Act March 3, 1911, c. 231, § 52, 36 Stat. 1101 (Comp. St. 1913, § 1034), may, in a state having more than one federal court district, in each of which a defendant lives, be brought in either.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. ⬤⟳269.]

2. BANKS AND BANKING ⬤⟳254—NATIONAL BANKS—LIABILITY OF DIRECTORS —BILL BY RECEIVER.

   Bill by receiver of national bank against directors held sufficient to state civil liability, under Rev. St. § 5239 (Comp. St. 1913, § 9831), for knowingly violating or permitting violation of the national banking laws.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 950–957; Dec. Dig. ⬤⟳254.]

In Equity. Bill for accounting and equitable relief by N. M. Dudley, receiver, against C. C. Hawkins and others. On motion to dismiss, filed by defendants. Motion denied.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This bill is brought by N. M. Dudley, receiver of the Americus National Bank, against the several defendants, who were directors of the bank. The receiver was appointed by the Comptroller of the Currency because of the failure of the bank. At that date the liabilities were $449,581.71. There were realized from the assets $245,000. In addition to this, there was an assessment levied on the stockholders of 100 per cent. After applying the assets and the assessment to the discharge of the obligations, the bank still remained indebted to the creditors and the innocent stockholders in the sum of $372,-651.75. The bill alleges that the directors did not provide officers who were fitted for their duties. The president, one L. A. Lowry, was a resident of Chicago and a citizen of the state of Illinois, and did not give any attention whatever to the affairs of the bank, and did not even attend the meetings of the directors. In addition to this, while the by-laws required a bond of the active officers, of N. M. Lowry, the cashier, no bond whatever was required. Wheatley, the assistant cashier, was intrusted with the duties of that office. It is alleged that he was a young man of notoriously extravagant habits, and often intoxicated. These facts were known to the directors, who took no redressive action. As a consequence of their negligence and indifference, allowing the face value of all the assets, they were exceeded by the liabilities in the amount of $93,767.43. There was a defalcation in the latter amount. In addition to this, the officers and directors approved loans to insolvents. There are exhibits to the bill showing these loans and the amount of the loss incurred thereby. It is further disclosed that the cashier and assistant cashier were allowed to pay overdrafts of irresponsible persons. These amounted to $80,716.47. An itemized list attached to the bill discloses this fact. Also large loans were authorized in excess of the 10 per cent. limit fixed by the national banking law, with consequent loss in a large amount. Certain of these loans were to a director, C. T. Lowry. Notwithstanding this man was already indebted to the bank in the sum of $7,560, he was permitted to discount with the bank 31 other notes, aggregating the sum $26,028.60. All but two of the parties making these notes were tenants on his place. They were without financial responsibility, and had no means to pay the amount represented by the notes. This in itself was clearly in excess of the 10 per cent. of the capital and surplus of the bank, which has sustained the loss of the entire amount, in the aggregate $33,585.60. Illegal dividends were declared by meetings of the board of directors, at which the directors were present. The result of all this misconduct on the part of the directors, and much more set out in the bill, is that the creditors and shareholders not responsible have lost $372,651.75. An accounting is prayed, and it is alleged that there is no remedy at law. The bill waives answer under oath, and prays judgment against the directors liable. There is a prayer also for general relief.

This bill the defendants have moved to dismiss. The grounds of the motion are numerous: The want of equity; a complete and adequate remedy at law; failure to set forth specific incidents of negligence; vagueness in the allegations; a failure to identify the wrongdoers, or to specify responsible or particular directors; a misjoinder of causes of action, and a commingling of the same; a failure of specification to show responsibility. Upon these grounds the respondents pray that the bill should be dismissed, and a judgment whether they should be called on to make further answer. There are, in addition, motions to strike certain paragraphs of the bill, or parts thereof, and to demand itemized statements of assets. These are based upon the ground that there are no allegations to show what part of the amounts sued for would be due creditors, and what part to stockholders. Again, paragraph 7 of the bill attempts to state the duties of bank directors and officers in an erroneous way, and sets forth erroneous conclusions of law, and, generally, vagueness and indefiniteness, and insufficiency to entitle the plaintiff to the relief prayed. A similar motion is directed against paragraph 8 and paragraph 9. It is particularly objected that the allegations raise issues of fact, which are not cognizant in a court of equity, but which should be determined by a jury in an action at law.

Paragraph 10 is also the object of attack. It is insisted that the general allegation that the bank sustained loss of $20,000 or other large sum because

N. M. Lowry was not under bond is too vague and indefinite. So, also, with paragraph 11. This fails to allege, it is insisted, who made the loans by which the bank suffered loss, and that the itemized statement of such loans (Exhibit C) is insufficient pleading to show liability of the respondents. So, also, with paragraph 12, assigning liability for numerous overdrafts amounting to $80,716.47; and paragraph 13, charging liability for loss of $33,585.60, loaned to C. T. Lowry, a director. An equivalent criticism is directed to paragraph 14, in that it does not show which officer of the bank made the loans mentioned in the paragraph, or how the bank sustained loss by reason of the loans. As to paragraph 15, which assigns liability for the declaration of illegal dividends in the sum of $12,000, the defendants object that it does not appear that either of them knew that the bank was insolvent and that the dividends had not been earned. Paragraph 16 of the bill charges a liability against the respondents in the sum of $93,000; this upon the ground that the bank borrowed more money than authorized by section 5202 of the Revised Statutes (Comp. St. 1913, § 9764). This is assailed on the ground that the law specified does not make any provision for liability of directors for borrowing a greater sum of money than that authorized by it, and that no prayer for accounting could be based upon this charge. Paragraph 17, which charges loss because of negligence of the directors, in excess of $372,651.75, is assailed because it does not show how much has been lost by the bank, how much by the shareholders, and how much by the creditors, or what particular officer or director was responsible for said alleged loss.

The motion to dismiss concludes with a general attack on the twentieth paragraph and all the prayers of the bill, which, it is insisted, should be stricken because the plaintiff is not entitled, as matter of law or equity, to the relief prayed. In addition to this, each of the Lowrys have filed separate motions to dismiss. In the main they are, in substance, the same as the motions hereinbefore stated. The motion of J. S. Lowry denies the jurisdiction of the court, because he is a citizen of Terrell county, in the Northern district of Georgia. That of L. A. Lowry denies the jurisdiction, because he is a citizen of the state of Illinois. Counsel were heard upon the various motions to dismiss, and the court took them under advisement.

W. A. Dodson and Shipp & Sheppard, all of Americus, Ga., for plaintiffs.

Dupont Guerry, of Macon, Ga., and W. P. Wallis and Hollis Fort, both of Americus, Ga., for defendants Lowry.

Jordan & Lane and Miller & Jones, all of Macon, Ga., for other respondents.

SPEER, District Judge (after stating the facts as above). There seems to be no doubt that the bill must be dismissed as to L. A. Lowry, for the reason that he is a citizen of another state. Order may be taken to that effect.

[1] The contention of J. S. Lowry that the bill cannot be maintained here as to him, because he is a citizen of the Northern district of Georgia, is not well founded. This is a joint suit for joint negligence and misconduct of the directors of the Americus National Bank. Section 52 of the Judiciary Act (Act March 3, 1911, c. 231, 36 Stat. 1101 [Comp. St. 1913, § 1034]), provides that:

"When a state contains more than one district, every suit not of a local nature, in the District Court thereof, against a single defendant, inhabitant of such state, must be brought in the district where he resides; but if there are two or more defendants, residing in different districts of the state, it may be brought in either district, and a duplicate writ may be issued against the defendants, directed to the marshal of any other district in which any defendant resides. * * *"

So the motion of J. S. Lowry on this ground must be denied.

[2] The motion to dismiss upon the general grounds must be determined in view of the law fixing the liability of national bank directors for misconduct which may fairly be construed as willful and intentional neglect of their duties. A leading case on this subject is that of Briggs v. Spaulding, 141 U. S. 132–174, 11 Sup. Ct. 924, 35 L. Ed. 662. There the authorities were examined with great care, and the opinion was pronounced by Mr. Chief Justice Fuller. There was also a dissenting opinion rendered by Mr. Justice Harlan, in which Justices Grey, Brewer, and Brown concurred. It follows that the question in issue received the weightiest consideration. The opinion of the majority of the court may be condensed in this paragraph:

"In any view the degree of care to which these defendants [the directors] were bound is that which ordinarily prudent and diligent men would exercise under similar circumstances, and in determining that the restrictions of the statute and the usages of business should be taken into account. What may be negligence in one case may not be want of ordinary care in another, and the question of negligence is, therefore, ultimately a question of fact, to be determined under all the circumstances."

The more rigid rule is expressed in the dissent. It is in a quotation, on page 170 of 141 U. S., page 937 of 11 Sup. Ct. (35 L. Ed. 662), from the case of Martin v. Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49:

"Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers. They have something more to do than, from time to time, to elect the officers of the bank, and to make declarations of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known, in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business."

The opinions in this case have received the consideration of other courts. Said District Judge Brawley, in Wheeler v. Aiken County Loan & Savings Bank (C. C.) 75 Fed. 785:

"It may be stated as a result of this examination that the law holds it to be the duty of directors to direct; that they are not mere figureheads; that they may commit the banking business to duly authorized officers, exercising ordinary care and prudence in their selection, but this does not absolve them from the duty of reasonable supervision, or shield them from liability for the wrongdoing of such officials, if, through gross inattention, such wrongdoing has been permitted or has escaped their notice. While not trustees, in a technical sense, some of the duties required of trustees are demanded of them; and if, through their supine negligence and inattention, the officers of the bank, by systematic neglect of ordinary precautions, or by fraud, bring it to ruin, which could have been prevented by that amount of vigilance and supervision which persons of ordinary discretion generally exercise as to their own affairs, such directors cannot escape responsibility."

Again, in the case of Robinson v. Hall, 63 Fed. 222–228, 12 C. C. A. 674, 679, the Circuit Court of Appeals of the Fourth Circuit, Circuit Judges Goff and Simonton, and District Judge Hughes presiding, affords much light. Said District Judge Hughes, rendering the opinion:

"In the case at bar we have an essentially different state of facts to consider. The frauds and irregularities which resulted in the ruin of the bank went on through a period of more than three years, during all of which time the defendant directors were in office. Many of these irregularities were not things of secret occurrence and sudden development. They were such as must have been known to the defendants, if they gave even the most casual attention to the affairs of the bank. The embezzlement of Bowden, the $45,000 loans to the Northrops and to Kerchner, and the losses resulting, were facts that could not have eluded the most cursory attention of the directors to their duties."

The decision of the court below sustaining demurrers was reversed, and the case directed to proceed on plenary proofs to a decree on the merits.

It is true that, the Supreme Court, in Yates v. Jones National Bank, 206 U. S. 158, 181, 27 Sup. Ct. 638, 644 (51 L. Ed. 1002), through Mr. Chief Justice White, declared that section 5239, Revised Statutes (Comp. St. 1913, § 9831), fixes the exclusive rule of such liability. The section provides:

"If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this title, all the rights, privileges, and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper circuit, district, or territorial court of the United States, in a suit brought for that purpose by the comptroller of the currency, in his own name, before the association shall be declared dissolved. And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."

The learned Chief Justice points out that:

"Where by law a responsibility is made to arise from the violation of a statute knowingly, proof of something more than negligence is required; that is, that the violation must in effect be intentional."

In that case the wrong alleged was a misstatement in the making and publishing of the official reports of the condition of the bank. This case was reconsidered by the Supreme Court, in Jones National Bank v. Yates, 240 U. S. 556, 36 Sup. Ct. 429, 60 L. Ed. 788, Mr. Justice Hughes rendering the opinion; and the directors were held liable for knowingly participating in, or assenting to, the violation of the act.

In the case before the court the averments are such that we are driven to the conclusion that the case must be heard on full proof, in order that we may determine whether or not the misconduct and neglect of duty charged was in fact intentional or otherwise; that is to say, not only whether they knowingly permitted, assented to, and allowed the violation of the national banking law, but also whether the facts were such as to charge men in their position with such knowledge. The president selected was a resident of a distant state; no bond was required of the cashier; the assistant cashier was notoriously profligate; he was the principal agent of the bank; the officers and directors approved large loans to insolvents; the cashier and assistant cashier were allowed to pay overdrafts of irresponsible persons to the amount of $80,716.47. Large loans were authorized in excess of the 10 per cent.

limit on the capital stock; a number of those were to a director. Illegal dividends were declared at a meeting of the directors, where defendants were present. There is much else in the bill indicating such reckless mismanagement that inquiry whether the directors are chargeable with resulting loss seems demanded by equity. This is not an action by individual stockholders to redress individual injuries. It is brought, and the suit is properly filed, in equity.

For the purpose of this motion, all of the averments of the bill must be held to be true, and, taken all together, statements, charges, and prayers are so significant and apparently so meritorious that the duty of the court to overrule the several motions to dismiss seems imperative; and it will be so ordered.

