SOUTHERN STATES POWER COMPANY v. CARRIE L. IVEY.

160 So. 46.

Opinion Filed March 14, 1935.

*James H. Finch,* for Plaintiff in Error;

*John H. Carter* and *John H. Carter, Jr.,* for Defendant in Error.

ELLIS, P. J.—Carrie L. Ivey brought an action in the Circuit Court for Jackson County in general assumpsit against the Southern States Power Company, a corporation, for money had and received by the defendant for the use of the plaintiff. The damages were laid in the sum of one thousand dollars. The amount alleged to have been received by the defendant was eight hundred and seventy dollars.

The declaration was filed July 3, 1933. The bill of particulars showed that five hundred and eighty dollars were received June 16, 1930, and two hundred and ninety dollars were received on January 20, 1932.

The defendant interposed the plea of the general issue, which is never was indebted as alleged. There was a verdict for the plaintiff in the sum of eight hundred and seventy dollars with interest at eight per cent. from November 1, 1932. The judgment entered was for the sum of nine

hundred and fifty-five dollars and sixty-four cents and costs amounting to thirty-eight dollars and fifty-five cents. To that judgment the defendant took a writ of error.

A motion for a new trial was made and overruled.

The points of the controversy arise in the evidence, whether in the circumstances the money may be said to have been paid to the defendant, and secondly whether the transactions were of such character as the defendant *ex aequo et bono* ought to return it to the plaintiff.

In the case of Ness v. Cowdery, 110 Fla. 427, 149 South. Rep. 33, we said that the action for money received by the defendant for the use of the plaintiff is deemed to be a species of equitable suit and lies in all cases where in equity and good conscience the plaintiff ought to have the money which he seeks to recover and the defendant ought not to retain it. It was also said in that case that a tort arising from deceitful warranties in a sale of cows could not be set up in support of an action for money received, as they constitute entirely different causes of action. In fact, the action of assumpsit for money had and received by the defendant for the use of the plaintiff is a definite waiver of the tort.

Counsel for the defendant in error, Mrs. Ivey, argued that the plaintiff should recover because the money was obtained by the defendant through or by means of an imposition upon her and he cited the case of Cullen v. Seaboard Air Line R. Co., 63 Fla. 122, 58 South. Rep. 182.

The case is not analogous to the one at bar as a consideration of the evidence will reveal. The Cullen case was one for the recovery from the Railroad Company of excess freight charges which the company had exacted from the plaintiff for certain transportation service. The action was in form a general assumpsit for money received by

the defendant for the use of the plaintiff and for money paid by the plaintiff for the defendant at its request. The bill of particulars, which was attached to the declaration and made a part of it, showed the nature of the claim. A demurrer to the declaration was interposed and sustained. The contention was that Section 2911 of the General Statutes, 1906, which gave a shipper of freight over the lines of a common carrier a special right of action against the carrier for the overcharge superseded the common law action for money received by the defendant for the use of the plaintiff.

The court held that it did not, and said that the common law right to recover freight charges collected in excess of reasonable rates is essentially different from the right of action given by the statute to recover charges in excess of rates fixed by the Railroad Commissioners; that the common law right of action was not inconsistent with or repugnant to the right of action given by the statute which does not by necessary implication supersede the common law right of action.

The court held that the demurrer should not have been sustained and in discussing the common law action for money received said that it "lies for money paid by mistake or upon consideration which has failed, or for money obtained through imposition, express or implied, or extortion or oppression, or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under these circumstances."

One meaning of the word "imposition" is imposture, fraud, deception, cheat, artifice, trickery or trick.

The word has been so used by some authors in their literary works. It was so used by Goldsmith, but it is not used in that sense when used in discussing the circumstances

which give rise to the legal action of assumpsit for money received, which is an action arising out of a contract express or implied, but a fraud, deception, trickery, imposture, cheat would give rise to an action in tort which arises *ex delicto*. Where a person taking advantage of his position, or the circumstances in which another is placed, exacts a greater price for services rendered than is fair and reasonable, where such a compensation only is allowable, the exaction of the unreasonable price for the service rendered may be said to be an imposition, but not of the character of an imposition by fraud, deception or trickery which would support an action in tort. Such an imposition would support an action of assumpsit for money received, but not necessarily an action in tort for deceit or fraud.

In the case at bar Mrs. Ivey became interested in preferred stock offered by a corporation known as Central Public Service Corporation, whose home office and domicile was in Baltimore, Maryland, and purchased a certificate of ten shares, paying therefor five hundred and eighty dollars. That transaction occurred in 1930. Later in 1932 she acquired five more shares of stock in the same corporation, paying therefor two hundred and ninety dollars. For a while she received dividends upon the first certificates. The Company suspended the payment of dividends early in the year 1932.

The Southern States Power Company is a corporation engaged in the electric utility business at Marianna, Florida, and other places in West Florida. The Central Public Service Corporation was organized as a holding company. It purchased and sold the stock of utility companies. At the time of the transaction mentioned the stock of the Southern States Power Company was not owned by the Central Public Service Corporation. In the first transaction Mrs.

Ivey purchased the stock through a Mr. Kynes, who was an employee of the defendant corporation. He and his wife sold stock for the Central Public Service Corporation.

The second transaction was conducted by Mrs. Ivey through Mrs. Kynes. That certificate of stock was not sold directly by the corporation to Mrs. Ivey. It was owned by a Mr. Will Hightower and was sold by him through Mrs. Kynes.

Mrs. Ivey probably obtained the impression from conversation with different people, some of whom were connected in an official way with the defendant corporation as officers or employees, that the local corporation was owned and controlled by the Central Public Service Corporation. Her testimony indicates that she had a very unclear and confused idea about each transaction. She thought that because the persons who sold her stock were connected in an official way with the local corporation in one capacity or another that it was that corporation selling the stock.

If that corporation may be held to liability in the transactions it must be on account of the fraud and deceit practiced by the sellers of the stock to Mrs. Ivey, but there is no evidence of any such fraud perpetrated by them upon her, nor is there any evidence that the local corporation received any part of the money paid by Mrs. Ivey in either transaction. In the last transaction Mr. Hightower received the money, Mr. Kynes receiving a commission from him for selling the stock.

Albert E. Pierce & Company of Chicago, Illinois, were the sales agents for the Central Public Service Corporation. Some member of that firm came in person to Marianna and engaged local salesmen to sell stock in the Company. Some of them so engaged were employees of the local Company. The use of the corporation's name after the sale to Mrs.

Ivey as indorser of a check given for the stock to procure at the local bank a cashier's check was a mere bank routine matter in which the local corporation had no interest whatever.

In December, 1932, Mrs. Ivey brought an action in the Circuit Court for Jackson County against the Central Public Service Corporation and recovered a judgment for damages in the sum of nine hundred and thirty-seven dollars for breach of contract to repurchase the stock which it had sold to Mrs. Ivey.

The record of the evidence taken in the case is not so full as the statements made in the argument of the case. The transactions seem to have been of that type where persistent high powered and largely disingenuous salesmanship prevailed over the half-doubting but prurient cupidity of an uninformed lady with a small amount of money to invest.

The evidence, however, entirely fails to show that the local corporation received the money or that it was in anywise bound contractually by the activities of the persons who sold the stock to Mrs. Ivey.

The judgment is therefore reversed.

TERRELL, BROWN and DAVIS, J. J., concur.

WHITFIELD, C. J., and BUFORD, J., dissent.

BUFORD, J. (dissenting).—I am unable to agree with the opinion prepared by Mr. Presiding Justice ELLIS in this case because I think that the evidence was sufficient, if believed, to warrant the jury in finding that Southern States Power Company, a corporation, received the appellee's money under such conditions as to make it answerable to the plaintiff in the court below, appellee here, in a suit where the declaration was on the common count for money had and received by the defendant for the use of the plaintiff.

It is immaterial that the defendant in the court below on receiving the money immediately turned it over to someone else. The record shows that the servants and agents of the Southern States Power Company sold stock in its parent corporation, Central Public Service Corporation. The record shows that Central Public Service Corporation owned all the stock of Southern States Power Company; that the stock in Central Public Service Corporation was sold through an agency known as Albert E. Pearce Company. It was made to appear that Albert E. Pearce Company employed the agents of Southern States Power Company to sell the stock of Central Public Service Corporation; that the name of Central Public Service Corporation appeared on signs exhibited on the window, and otherwise, of, and at, the offices occupied by Southern States Power Company; that the agents and employees of Southern States Power Company represented to the plaintiff in the court below that Southern States Power Company and Central Public Service Corporation was one and the same thing and that the company would redeem the stock at any time the purchaser was not satisfied with it. The purchaser was acquainted with Southern States Power Company and its business. Southern States Power Company was solvent and has remained so, and Central Public Service Corporation, the record shows, made good its agreement to redeem the stock sold as long as it was financially able to do so; but that company became insolvent and thereupon failed to carry out its agreement.

It is clear to my mind that the stock was sold and that the plaintiff bought the stock solely because she believed that Southern States Power Company was responsible for the stock and she was led to believe that by Southern States Power Company's agents and representatives.

Plaintiff's checks were made payable to Southern States Power Company. Southern States Power Company endorsed those checks and cashed them.

So it is, I think the judgment should be affirmed on authority of the opinion and judgment in the case of Ness v. Cowdery, 110 Fla. 427, 149 Sou. 33.

WHITFIELD, C. J., concurs.