599 So.2d 694 (1992)
OCEAN BANK OF MIAMI, a state banking corporation, Appellant,
v.
INV-UNI INVESTMENT CORP., a Florida corporation, Appellee.
No. 91-273.
District Court of Appeal of Florida, Third District.
May 12, 1992.
Rehearing Denied June 16, 1992.
*695 Kirkpatrick & Lockhart and Warren R. Trazenfeld, Miami, for appellant.
Richard S. Rachlin, West Palm Beach, for appellee.
Before BARKDULL, HUBBART and FERGUSON, JJ.
FERGUSON, Judge.
The question presented in this appeal is whether the conduct of Ocean Bank in receiving a mortgage from a corporate borrower without conducting an investigation into the authority of the borrowers's officers amounted to a fraud so that the mortgage should be nullified.

Background
Jesus Amado was the president, treasurer, and sole director of Inv-Uni Investment Corporation. His son, Jesus Amado, Jr., was the corporation's vice-president and secretary. Tarscisio Ottogalli, an Italian businessman, and sole shareholder, appointed the Amados as the corporation's officers.
Inv-Uni's articles of incorporation empowered the corporation to mortgage and dispose of its real estate. Jesus Amado, president, was given a broad power of attorney which authorized him to enter into any contract he considered beneficial to the interests of the corporation.
In 1982, Amado used corporate funds for the purchase of unimproved real property and construction of a warehouse on the parcel. The land and warehouse were Inv-Uni's major assets. Four years later, Amado mortgaged the warehouse to Ocean Bank of Miami as collateral for a loan to Luxury Auto Sales, Inc., a Florida corporation owned by Amado and his son. Amado and his son were also the sole officers and directors of Luxury Auto Sales, Inc. The Amados gave twenty shares of Luxury's stock to Inv-Uni as collateral for the Ocean Bank loan.
In 1987, the loan to Luxury Auto went into default for nonpayment. Ocean Bank filed suit to foreclose the mortgage; Inv-Uni filed a two-count action seeking, in the first count, a declaratory judgment that the mortgage was void and, in the second count, damages for slander of title. The trial court directed a verdict for Ocean Bank on the slander of title claim. On the declaratory judgment complaint, the court ruled that the mortgage to Ocean Bank was null and void because Amado, Sr., had no actual or apparent authority to mortgage the property and Ocean Bank had a duty to inquire into Amado's authority to pledge the land owned by Inv-Uni. By that latter ruling Ocean Bank's foreclosure action was mooted. We disagree with the declaratory judgment.

Section 692.01
Section 692.01, Florida Statutes (1991), the controlling provision, was enacted in 1971 to allow corporations, through their presidents or vice-presidents, to execute instruments conveying an interest in land without obtaining a corporate resolution. Any instrument executed in accordance with the statute is deemed valid as against third parties even though the officer was without authority to enter into the transaction, unless there was fraud by the receiving party. The statute states:

*696 any corporation may execute instruments ... mortgaging, or affecting any interest in its land by instruments sealed with the common or corporate seal and signed in its name by its president or any vice president or chief executive officer... . No corporate resolution need be recorded to evidence the authority of the person executing the ... mortgage,... and an instrument so executed shall be valid whether or not the officer signing for the corporation was authorized to do so by the board of directors, in the absence of fraud in the transaction by the person receiving it.
It is undisputed that the mortgage instruments, except for the corporate resolution, were proper in form. The question is whether Ocean Bank, the party receiving the mortgage, acted fraudulently in its dealing with Inv-Uni.
Inv-Uni relies on American Business Credit Corp. v. First State Bank, 385 So.2d 1080 (Fla. 4th DCA 1980), for the rule that a person dealing with an officer of a corporation has a duty to inquire into the officer's authority when circumstances indicate a fraudulent purpose. There it was held that a bank breached a duty to inquire where the corporation's president pledged corporate assets to secure a personal loan. The American decision made no mention of section 692.01.
In a later case, Prezioso v. Cameron, 559 So.2d 423 (Fla. 4th DCA 1990), the same court, construing the statute, concluded that a bank had no duty to inquire where the corporate officer executed a mortgage to secure a loan obtained on behalf of the corporation with the proceeds going to the same corporation. A challenge had been made, in the lender's action to foreclose on the mortgage, that the lender knew or should have known that officers of the borrowing corporation were without authority to pledge the corporation's assets, or that the lender had a duty to inquire into the authority of the officers to mortgage the corporation's property.
Rejecting the defense and affirming a summary judgment for the lending institution, the court held that in the absence of evidence of fraud on the part of the lender, there was a statutory right to rely on the officer's status as sufficient power to bind the corporation in the execution of mortgage instruments. Id. at 424. The court further distinguished Prezioso from American, noting that in American the officer pledged corporate property as security for a personal loan.

Duty to Investigate
Inv-Uni points to certain facts in the record, from the testimony of Ocean Bank's loan officer, as evidence which placed a duty on the bank to closely scrutinize Amado's actions as president of Inv-Uni. Particular reliance is placed on the testimony of the loan officer in charge of the transaction, Walter de Villiers, who acknowledged an awareness that the proceeds from the loan secured by Inv-Uni's property was to establish a $300,000 line of open credit to another corporation, Luxury Auto Sales, where the Amados were sole officers and owners. De Villiers testified that he assumed Amado was also a part owner of Inv-Uni, and knew that an "Italian gentleman" had an ownership interest in the corporation.
Applying section 692.01 to the facts, which are essentially undisputed, the question is whether Ocean Bank had duty to investigate, and whether that failure to investigate rose to the level of fraud as contemplated by the statute. As there is no statutory history to aid us in determining what the legislature intended when it wrote that an instrument is valid "in the absence of fraud in the transaction by the person receiving it," we assume from the plain language that the legislature intended such transactions to be valid unless there was fraud by the lender, or complicity between the lender and officers of the corporation giving the mortgage.
Section 692.01 is a codification of the equitable principle that "[w]here a prejudicial situation results from a wrongful act of a third person, the decision must be against the party whose conduct made possible the wrongful act, either by fraud or negligence." Gables Racing Ass'n v. Persky, 148 Fla. 627, 643, 6 So.2d 257, 263 *697 (1941). Accord Southeast First Nat'l Bank v. Scutieri, 396 So.2d 859 (Fla.3d DCA 1981). The statute serves the worthwhile end of uncluttering the channels of commerce by relaxing legal obligations of commercial lenders to investigate the authority of duly-appointed officers of corporations with whom they do business. It was Mr. Ottogalli, the sole owner and real party in interest, who placed the Amados in a position to defraud.

Fraud
Although we conclude, on the facts known to the lender, that the transaction was not of a suspicious character so as to trigger a duty to investigate, there is a question whether a mere failure to investigate would have justified an invalidation of the mortgage if the circumstances had been suspicious. Assuming a breach of a legal duty, a fact-finder in a tort action could find that Ocean Bank was negligent by common-law standards. However, a finding of fraud on the part of Ocean Bank as the party receiving the mortgage  beyond ordinary negligence  must be shown under the statute in order to defeat the bank's rights as mortgagee. There is a clear distinction between negligence and fraud. Bohlen, Misrepresentation as Deceit, Negligence, or Warranty, 42 Harv. L.Rev. 733, 738 (1929). On this point, the analysis ends with an examination of fraud as defined in Florida in law.
To prove fraud a plaintiff must establish that the defendant made a deliberate and knowing misrepresentation which was designed to cause detrimental reliance. First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536 (Fla. 1987). Scienter, or guilty knowledge, is an element of intentional misconduct, which can be established by showing actual knowledge, or that the defendant was reckless or careless as to the truth of the matter asserted. See Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984).
Where a plaintiff assigns fraud to the failure of a defendant to investigate, it must be shown that the defendant deliberately refused to examine that which it was his duty to examine, or made representations as to a condition which had not been examined without knowing whether it was true or false, and it proved to be untrue. Jones Nat'l Bank v. Yates, 240 U.S. 541, 555, 36 S.Ct. 429, 435, 60 L.Ed. 788 (1916). Therefore, to constitute fraud in its usual sense,[1] Inv-Uni had to establish that Ocean Bank breached a duty to investigate, and made a misrepresentation as to a material fact with reckless disregard for the truth. On an application of relevant legal and equitable principles to the facts, a fraud level of culpability cannot be established because Ocean Bank made no false statement of a material fact, see Watson v. Jones, 41 Fla. 241, 25 So. 678 (1899), nor did it commit any deception. See Southern States Power Co. v. Ivey, 118 Fla. 756, 160 So. 46 (1935).
De Villiers, who had known Mr. Amado for years, testified that the transaction was not so unusual as to put a third party on notice of a possible fraud and that it was a common lending practice to pledge one corporation's assets to secure a loan to a second corporation where the corporations had the same officers. He also testified that it has not been the practice, in any of the banks where he worked previously, to obtain shareholder approval in corporate loan transactions. The practice described by de Villiers comports with section 692.01 and Florida case law which holds that "[w]hen, in the usual course of business of a corporation, an officer or other agent is held out by the corporation or has been permitted to act for it or manage its affairs in such a way as to justify third persons who deal with him in inferring or assuming that he *698 is doing an act within the scope of his authority, the corporation is bound thereby." Symons Corp. v. Tartan-Lavers Delray Beach, Inc., 456 So.2d 1254, 1258 (Fla. 4th DCA 1984). See also Master Consolidated Corp. v. BancOhio Nat'l Bank, 61 Ohio St.3d 570, 575 N.E.2d 817 (1991) (lender was entitled to rely on officer's request to disperse proceeds, without making an investigation, where the funds were routed to parent corporation; funds to parent corporation did not raise specter of unauthorized gift or loan).

Conclusion
We do not decide whether under any set of circumstances a lender, which is not a participant in a fraud by officers of a borrowing corporation, would nevertheless become an accomplice by inaction where there is knowledge of the wrongdoing. In this case, Ocean Bank's officer testified that he thought Jesus Amado was an owner of both corporations. Facially, there was no personal loan to the Amados. In connection with the pledge of Inv-Uni's property to secure the loan to Luxury Auto Sales, there was a transfer of stock in Luxury Auto Sales to Inv-Uni which created the appearance of a valid transaction.
We hold that section 692.01, in the absence of fraud, relieves a lender receiving a mortgage on corporate property of a duty to investigate for actual authority where the officers of the corporation giving the mortgage are common to another corporation to which the loan proceeds are paid. An invalidation of the lender's mortgage for misdeeds of the borrowing corporation's officers, without evidence of an intentional misrepresentation or deception by the lender, or proof that the lender had knowledge of a fraud by the corporation's officers, would contravene the obvious intent of the statute.
Reversed and remanded with directions to enter a judgment for the appellant.
NOTES
[1] No claim is made that the bank's actions amounted to a constructive fraud or legal fraud as those terms generally apply only where a confidential or fiduciary relationship has been abused. See Puchner v. Bache Halsey Stuart, Inc., 553 So.2d 216 (Fla.3d DCA 1989); Menendez v. Beech Acceptance Corp., 521 So.2d 178 (Fla.3d DCA 1988); 27 Fla.Jur.2d Fraud & Deceit § 14 (1981). Neither is there a claim that the bank conspired with the borrower's officers to defraud the owner. See Snead v. United States Trucking Corp., 380 So.2d 1075 (Fla.1st DCA), rev. denied, 389 So.2d 1116 (Fla. 1980).