**Charles McCUTCHEON, in his official capacity as Sheriff of Palm Beach County, Plaintiff,**

v.

**KIDDER, PEABODY & COMPANY, INC., Defendant.**

No. 95–8264–CIV–RYSKAMP.

United States District Court, S.D. Florida.

June 13, 1996.

Zell Davis, Jr., Davis, Gordon & Doner, P.A., West Palm Beach, FL, for Plaintiff.

Debra Anne Jenks, Richard Lee Martens, Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, West Palm Beach, FL, for Defendant.

### ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANT'S MOTION TO DISMISS

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon defendant's Motion to Dismiss (DE 31), filed April 1, 1996. Plaintiff has responded in opposition to the Motion to Dismiss and defendant has replied to plaintiff's response.

### I.  BACKGROUND [1]

On July 28, 1993, Jerome Nolan, Director of Administration for the Palm Beach County Sheriff's Office (plaintiff), entered into a contract with Kidder, Peabody & Co., Inc., (de-fendant) under which defendant would purchase mortgage backed securities for plaintiff for investment purposes. Response, Exhibit A. Plaintiff's investment practices are governed by various state and county laws, including the Palm Beach County Investment Ordinance, which requires that plaintiff's funds be invested "with primary emphasis on safety and liquidity." Investment "for speculation" is expressly forbidden. SAC at 7. Plaintiff alleges that defendant was aware of and on notice of these requirements and policies. *Id.* Plaintiff further alleges that defendant advised plaintiff to purchase specific securities that defendant was aware were high risk and therefore did not conform to plaintiff's investment requirements.[2] Plaintiff asserts it would not have agreed to the purchase of these securities had defendant disclosed the nature of the risks associated with the securities. *Id.* As a result of its investment in these securities, plaintiff lost large sums of money.

In Count I, plaintiff alleges that, in the context of providing advice to plaintiff concerning the purchase of securities, defendant owed a fiduciary duty to plaintiff to recommend only "suitable" securities for purchase. Count I also alleges defendant violated both state law governing municipal investments, Fla.Stat. § 166.261, and the Palm Beach County Investment Ordinance, in advising plaintiff to purchases excessively risky securities. Plaintiff asserts that defendant was unjustly enriched as a result of breaching its fiduciary relationship with plaintiff and by violating the above-cited laws, and plaintiff seeks restitution from defendant of all monies paid to it, including principal, commissions and fees.

Plaintiff alleges in Count II that defendant violated § 10(b) of the Securities Exchanges Act of 1933 and C.F.R. Rule 10b–5 by virtue

---

**1.** The information contained in this section is taken from plaintiff's second amended complaint (hereinafter "SAC"), plaintiff's response to defendant's motion to dismiss (hereinafter "response"), or defendant's motion to dismiss (hereinafter "MTD").

**2.** The "high risk securities" plaintiff alleges defendant fraudulently sold to it are known as "inverse floaters." The rate of return on an inverse floater is mortgage-based and determined by the difference between a rate fixed when the inverse floater is issued and the market rate. The rate of return moves inversely with the market interest rate. Plaintiff contends that an investment portfolio concentrated in inverse floaters of the kind defendant sold to plaintiff represents a leveraged and highly speculative gamble that interest rate will be stable or decline. SAC at 14–15.

of its intentional misrepresentations and omissions with regard to the nature of the securities plaintiff purchased. Plaintiff contends that defendant fraudulently represented to plaintiff that it was purchasing government backed securities with respect to which both principal and interest were guaranteed. Plaintiff seeks damages in excess of $1.4 million for defendant's purportedly illegal conduct.

Plaintiff's Count III also asserts a claim for damages in excess of $1.4 million on the basis of defendant's alleged breach of the fiduciary duty it owed to plaintiff. Aside from the specificity in the amount of damages claimed, plaintiff's breach of fiduciary duty claim in Count III does not seem to be materially different than its fiduciary claim in Count I.

Count IV of plaintiff's Complaint alleges violations of the Florida Securities and Investor Protection Act, Fla.Stat. § 517.301. Asserting that defendant repeatedly represented the securities to be safe investments consistent with plaintiff's investment objectives, plaintiff contends that defendant knowingly misrepresented and omitted material information about the risk of the securities in violation of the Act. Based on this conduct, plaintiff also alleges that defendant knowingly defrauded plaintiff in the context of the sale of such securities. Plaintiff demands damages in excess of $1.4 million and recision pursuant to the Florida Securities and Investor Protection Act, § 517.211(3)(a), and tenders to defendant the securities at issue in this case.

Count V is a claim of common law fraud based upon defendant's alleged knowing misrepresentations and omissions of material fact with regard to the level of risk inherent in the securities it sold plaintiff. Again, the damages claimed are in excess of $1.4 million.

Finally, plaintiff seeks an award of punitive damages for the willful and malicious conduct of the defendant in advising plaintiff to purchase excessively risky securities for the purpose of profiting unjust from such purchases.

On this motion to dismiss, defendant asks the Court to dismiss plaintiff's Counts I, III, and V for failure to state a claim upon which relief can be granted. Defendant also seeks to dismiss Counts II, IV, and V for failure to allege fraud with particularity.[3]

## II. LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss should not be granted unless the plaintiff can prove no set of facts in support of its claim entitling it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss, the Court must accept all the Plaintiff's allegations as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint need only be "a short and plain statement of the claim," and, as long as the pleadings "give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," notice pleading has been satisfied. *Conley v. Gibson*, 355 U.S. at 47, 78 S.Ct. at 102–03.

## III. DISCUSSION

Defendant first argues that Florida's economic loss rule bars all of plaintiff's common law tort claims (*i.e.*, Count I—breach of fiduciary duty, Count III—breach of fiduciary duty, and Count V—fraud). The Court agrees.

■ The Florida Supreme Court has held that without some conduct resulting in personal injury or property damage, plaintiffs can sustain no independent tort claims to recover economic damages flowing from a breach of contract. *Interstate Securities Corp. v. Hayes Corp.*, 920 F.2d 769, 773 (11th Cir.1991) (citing *AFM Corp. v. Southern Bell Tel. & Tel. Co.*, 515 So.2d 180 (Fla.1987)). The *AFM* Court determined that parties to a contract can only seek tort damages if conduct occurs that establishes a tort distin-

---

**3.** Defendant's motion to dismiss actually states "Kidder also seeks dismissal of the Complaint pursuant to Fed.R.Civ.P. 9(b) for failure to allege fraud with particularity." Because allegations of fraud are material to only those Counts that allege common law and securities fraud, the Court applies defendant's request to Counts II, IV, and V only.

guishable from or independent of the breach of contract. *Interstate*, 920 F.2d at 773; *AFM*, 515 So.2d at 181 (internal quotations omitted).

## A. Counts I and III—Fiduciary Duty

■ Applying the economic loss rule to securities cases, courts have found that claims of breach of fiduciary duty and common law fraud are barred. In *Interstate, supra*, the plaintiff argued that Florida common law imposes a duty of good faith as well as a fiduciary duty upon securities brokers in their dealings with investors, and a failure to perform these duties results in an actionable claim against a broker independent from any contractual claims. The Eleventh Circuit found otherwise, noting that the relationship which gives rise to the fiduciary duty between a broker and his client "does not arise unless the parties have entered into a contract involving the trade of securities." *Interstate*, 920 F.2d at 777. Finding that "a claim for breach of fiduciary duty [ ] is dependent upon the existence of a contract," the Circuit Court determined that plaintiff's fiduciary duty claim should have been dismissed pursuant to the economic loss rule. *Id. See also, Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538 (11th Cir.1990).

■ Plaintiff argues that the economic loss rule does not apply because plaintiff is not asserting a breach of contract claim and because there is no provision in the parties' contract that requires defendant to manage plaintiff's account, therefore there is no contractual basis upon which to sue defendant for providing inappropriate investment advice. The case law does not indicate that either a claim or a basis for a claim of contractual breach must exist in order to invoke the economic loss rule.

The Florida Supreme Court has made clear that the failure to bargain for adequate contractual remedies does not provide a party with an exception to the economic loss rule. In a recent opinion dealing with the economic loss rule, *Airport Rent–A–Car v. Prevost Car*, 660 So.2d 628, 630 (Fla.1995) the Supreme Court recognized:

[T]he law of contracts protects one's economic losses whereas the law of torts pro-

tects society's interest in being free from harm. Finding no reason to burden society as a whole with the losses of one who has failed to bargain for adequate contractual remedies, we concluded that contract principles are more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage.

The Florida Supreme Court has gone so far as to hold that, even where there is *no contractual privity* between the parties to an action in tort, the economic loss rule will bar recovery in tort. *See, Casa Clara Condominium Ass'n v. Toppino & Sons*, 620 So.2d 1244 (Fla.1993).

There is no evidence that Florida's lower courts have construed the economic loss rule as inapplicable in the absence of a contract claim. In *Strickland–Collins Const. v. Barnett Bank*, 545 So.2d 476 (Fla.App. 2 Dist. 1989) a Florida appeals court relied on the economic loss rule to find that, where the parties had a contractual relationship, plaintiff could not recover in tort for economic losses incurred by defendant's alleged negligence, even though the economic losses were not recoverable directly under the parties' contract. It is difficult to reconcile plaintiff's argument with the pronouncements of Florida's courts on the purpose and scope of the economic loss rule.

Likewise, the Eleventh Circuit has not indicated an intent to preclude the application of the economic loss rule where there is no breach of contract claim available to the plaintiff. For instance, the contract at issue in *Interstate* simply allowed the plaintiff to trade securities through an account held by defendant. There is no evidence that the contract contemplated defendant's management of plaintiff's account. Nonetheless, the Court applied the economic loss rule to bar plaintiff's fiduciary claim. The Eleventh Circuit reasoned that plaintiff's breach of fiduciary duty claim was not a tort arising out of **conduct** independent from the **contractual relationship**, "the [fiduciary] relationship does not arise unless the parties have entered into a contract involving the trade of securities." *Interstate*, 920 F.2d at 777 (em-

phasis added). Notably, the Circuit Court did not say "unless the parties have entered into a contract involving the management of plaintiff's securities account by defendant."

In a recent Eleventh Circuit case applying the economic loss rule, the plaintiff asserted an argument analogous to the argument offered by our plaintiff. In *Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.*, 83 F.3d 1317, 1343–44 (11th Cir., 1996), the plaintiff argued that because the contract between the parties did not address the specific conduct upon which the plaintiff was suing the defendant for negligence, the economic loss rule did not apply. The Circuit Court disagreed, reasoning that the subject matter of the contract between the parties (a financing agreement) encompassed the subject matter upon which plaintiff was attempting sue defendant for negligence (a duty to audit plaintiff's account and report results to plaintiff). Thus, the Court found that the appropriate theory under which to seek recovery of plaintiff's economic losses was contract, not tort. *See also, Hoseline, Inc. v. U.S.A. Diversified Products, Inc.*, 40 F.3d 1198 (11th Cir.1994) (Court applied economic loss rule to bar plaintiff's fraud and civil theft claims despite the absence of a breach of contract claim.); *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538 (S.D.Fla.1990) (Court applied economic loss rule to bar defendant's breach of fiduciary duty, negligence, and fraud claims on motion for summary judgment even though defendant's breach of contract claim had been dismissed earlier in the proceedings.)

There is no basis upon which the Court can distinguish this case from the cases discussed above. Plaintiff's claims for breach of fiduciary duty arise solely as a result of the existence of a contract between the parties. The fact that plaintiff does not claim breach of contract or that there is no provision in the contract dealing with defendant's duty to render suitable advice, does not shelter plaintiff from application of the economic loss rule. The Court DISMISSES plaintiff's fiduciary duty claims in Count I and Count III.

## B. Count V—Common Law Fraud

■ Similarly, courts considering whether the economic loss rule bars claims of common law fraud have answered that question in the affirmative. The appropriate analysis here is whether the conduct constituting the fraud is "interwoven" with the conduct constituting the breach of contract. *Serina v. Albertson's, Inc.*, 744 F.Supp. 1113, 1118 (M.D.Fla. 1990). Where the facts comprising the fraudulent conduct claim are closely interwoven with those constituting the breach of contract claim, the economic loss rule bars the pleading of a separate tort claim. *Leisure Founders, Inc. v. CUC Intern., Inc.*, 833 F.Supp. 1562, 1572 (S.D.Fla.1993). Or, put another way,

> Where a contract exists, and a plaintiff asserts a claim for fraud in the breach, this is essentially the equivalent of a claim that the breach was willful. A claim for willful breach of contract is still a claim for breach of contract, and does not give rise to tort remedies, *e.g.*, punitive damages, no matter how oppressive the breach.

*Id.* The Circuit Court in *Interstate, supra,* also found that, even though a fraud claim may be "in no way dependent upon a contract," such a claim is "foreclosed as a matter of Florida law under the *AFM* [economic loss] doctrine." *Interstate*, 920 F.2d at 777. In *Kee, supra,* the Eleventh Circuit likewise found that the plaintiff had not established a prima facie case on its common law fraud claim, under the economic loss rule. *Kee*, 918 F.2d at 1544. *See also, Hoseline, Inc. v. USA Diversified Products, Inc.*, 40 F.3d 1198, 1200 (11th Cir.1994) (The economic loss rule bars plaintiff's fraud claims which arose from conduct resulting in breach of contract.)

■ Here, defendant's alleged intentional misrepresentations and omissions concerning the nature of the securities is conduct inextricably intertwined with the relationship which arose due to the contract between the parties. Plaintiff asserts the same argument as that discussed under the fiduciary duty claim, *i.e.*, because there is no contract provision dealing with defendant's duty to render truthful and accurate information and advice, plaintiff cannot recover for breach of contract. For the reasons discussed above, the

Court does not find this argument persuasive. Lack of privity, among other things, has prevented parties from proceeding with breach of contract claims, but neither Florida courts nor courts in the Eleventh Circuit have found this reason to avoid applying the economic loss rule. Therefore, the Court will **DISMISS** Count V of plaintiff's Complaint.

### C. Counts II and IV—Securities Fraud

Rule 9(b) requires that "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). The Complaint must describe specific acts and omissions which, if true, might well be found after trial to constitute fraudulent behavior on the part of the defendant. *Leisure Founders*, 833 F.Supp. at 1574 (citing *Felton v. Walston & Co.*, 508 F.2d 577, 582 (2d Cir.1974)). This Court finds that plaintiff has alleged fraud with sufficient particularity to withstand this motion to dismiss. Plaintiff has identified which securities and transactions were involved in the alleged fraudulent misrepresentations and omissions, as well as the nature of the misrepresentations and omissions. This satisfies Rule 9(b) requirements. Defendant's motion to dismiss Counts II and IV is therefore **DENIED.**

### IV. CONCLUSION

The Court has considered the Motion and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that:

1) defendant's motion to dismiss plaintiff's claims for breach of fiduciary duty are hereby **GRANTED;**

2) defendant's motion to dismiss plaintiff's claim for common law fraud is hereby **GRANTED;**

3) defendant's motion to dismiss plaintiff's claims for securities fraud under Counts II and IV is **DENIED.**