705 So.2d 926 (1997)
Dorothy L. GREENFIELD, on her own behalf and on Behalf of all others similarly situated, Appellant,
v.
MANOR CARE, INC., Manor Healthcare Corp. d/b/a Manor Care of Boca Raton and/or Manor Care Nursing Center, Appellees.
No. 94-3487.
District Court of Appeal of Florida, Fourth District.
December 24, 1997.
*927 Robert M. Montgomery, Jr. of Montgomery & Larmoyeux, West Palm Beach, Scott R. Shepherd and Mark C. Rifkin of Greenfield & Rifkin LLP, Ardmore, PA., and Marguerite R. Goodman of Law Offices of Marguerite R. Goodman, Wynnewood, PA., for appellant.
L. Louis Mrachek of Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., West Palm Beach and Joel Hamme, William O. Bittman, Alexander P. Starr and Jerome D. Pinn of Reed Smith Shaw & McClay, Washington D.C., for appellees.
SHAHOOD, Judge.
Dorothy L. Greenfield appeals the trial court's order dismissing her eight-count, second amended complaint. We reverse the court's dismissal of counts I, II, III, VI, and VII, and remand with directions that the trial court reinstate appellant's cause of action.
Appellant fails to address counts IV, V, and VIII in this appeal and is deemed to have abandoned these counts on appeal. See Stutzke v. Kohl, 576 So.2d 356, 358 (Fla. 4th DCA 1991); Cohen v. Am. Legion, 546 So.2d 46, 47 (Fla. 4th DCA 1989). While the trial court was correct in dismissing the entity Manor Care Inc. as a defendant, based on the allegations of the second amended complaint, we hold that leave to amend should have been given to appellant to attempt to state a cause of action against that defendant. See generally Life Gen. Sec. Ins. Co. v. Horal, 667 So.2d 967, 969 (Fla. 4th DCA 1996)(leave to amend should be granted unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile.)

MATERIAL FACTS
Appellant's husband, Herman Greenfield, resided at appellee's, Manor Care, nursing home facility for a period of time prior to his death in August 1990. Following her husband's death, appellant, as surviving spouse, individually, and as personal representative of the estate of her late husband, and on behalf of all others similarly situated, filed an eight-count, second amended complaint alleging in count I, breaches of implied covenants of reasonableness, good faith, and fair dealing; count II, money had and received; count III, common law unjust enrichment; count IV, negligent omissions; count V, breach of contract for nursing care; count VI, breach of fiduciary duty; count VII, violations of Florida Statutes sections 400.022 (1993) and 400.165 (1993); and count VIII, declaratory judgment.
Appellant's second amended complaint alleged that she had executed an agreement with appellee whereby she agreed to be responsible for and personally guarantee the payment of bills rendered by Manor Care for nursing home care for her late husband.
Appellant's complaint alleged, in part, the following:
24. Manor Care acknowledged an obligation under the Agreement to provide Patients and their Guarantors with full disclosure of the charges for Goods and Services and the basis of those charges in the "State's Patient's Bill of Rights" attached to the Agreements. The fifth paragraph of this Bill of Rights states that patients have:
5. The right to be fully informed, in writing and orally, prior to or at the time of *928 admission and during [their] stay, of services and charges for services not covered under Title XVIII of Title XIX of the Social Security Act or not covered by the basic per diem rates; and of bed reservation and refund policies of the facility.
The complaint in question further alleged the following:
31. The superior bargaining power that Manor Care possessed and/or possesses over Plaintiff and Others is shown by the Agreements' Terms and Conditions, which state:
5. Charges billed by the Facility shall include, but not be limited to, amounts reflecting daily services for the period covered, plus amounts reflecting such additional supplies and services determined by the Facility, and/or Patient, and/or Physician to be necessary and proper for the health, comfort, rehabilitation and/or safety of the Patient. Any failure by the Patient and/or Guarantor to accept or pay for any such additional supplies or services shall be grounds for immediate termination of this Agreement without further written notice and shall authorize Facility to require, at its discretion, the immediate removal of Patient from the Facility. (Emphasis added.)
32. Manor Care's superior bargaining power enabled it to purport to retain complete discretion to impose and/or change any charge for such "additional supplies and services," except for a notice requirement for changes in the daily rate.
The Agreements state:
It is understood by all parties to this Agreement that the daily rate stipulated above covers only general nursing care. Any special nursing care or any special equipment or services shall be in addition to the daily rate in accordance with charge schedules established by the Facility.
It is further understood by all Parties to this Agreement that the Facility may change the daily rate only upon fifteen (15) days advance written notice to the Patient and/or Guarantor at the address or addresses indicated above.
The complaint went on to charge that appellee had systematically inflated prices billed to appellant and others by "consciously and deliberately adding on, marking up and overcharging for goods and services in violation of appellee's contractual obligations to such persons," and then set out several examples of the same.

DISMISSAL OF COUNT I

BREACHES OF IMPLIED COVENANTS OF REASONABLENESS, GOOD FAITH, AND FAIR DEALING
Appellant alleged that she was obligated to pay appellee only those charges for pharmaceuticals, medical supplies, and services reasonably incident to the care and treatment of her husband. Further, appellant alleged that there are implied covenants of reasonableness, good faith and fair dealing in the agreements relating to the charges for goods and services and that appellee breached those covenants by reasonably, unlawfully and excessively charging appellant and others for pharmaceuticals, medical supplies, and services, as well as not providing to members of the Florida Sub-Class the level of nursing services to which they were entitled.
In support of the motion to dismiss count I, Manor Care argued that the express terms of the contract (i.e., that the rates shall be based upon charge schedules established by the facility) foreclose any argument that the prices charged were unreasonable. The court agreed, and dismissed count I finding that "an implied covenant of good faith, reasonableness, and fair dealing may not be imposed to override these express terms, and as a matter of law, Manor Care may not be found to have breached such a covenant."
Under Florida law, all contracts include the implied covenants of good faith and commercial reasonableness. See Green Cos., Inc. v. Kendall Racquetball Invs., Ltd., 560 So.2d 1208, 1210 (Fla. 3d DCA 1990); Kies v. Hollub, 450 So.2d 251, 255 (Fla. 3d DCA), rev. denied, 453 So.2d 1364 (Fla.1984)("a requirement for commercial reasonableness will be read into any contract where possible, language to the contrary notwithstanding"); *929 Scheck v. Burger King Corp., 798 F.Supp. 692, 694 (S.D.Fla.1992).
In Payne v. Humana Hosp., Orange Park, 661 So.2d 1239 (Fla. 1st DCA 1995), rev. denied, 671 So.2d 788 (Fla.1996), Humana made an argument similar to that made by Manor Care in this case to support dismissal of the complaint. Humana's position was that since the contract between the parties in that case required the payment of "prevailing rates" and "regular charges," Payne could not maintain a cause of action alleging unreasonable, unconscionable and excessive charges. See id. at 1241. The trial court dismissed the complaint; however, on appeal, the First District reversed holding that Payne had alleged the necessary elements to state a cause of action, that he did not need to anticipate Humana's affirmative defenses, and that Humana's arguments were more properly raised in an answer rather than in a motion to dismiss. See id. The court held that since the contract between Humana and Payne did not expressly set the governing prices within its four corners, Humana was bound by a reasonableness requirement. See id. (citing F.L. Stitt & Co. v. Powell, 94 Fla. 550, 556, 114 So. 375, 378 (1927)(holding that where a contract for legal services fails to expressly provide for the amount of the fee, a "reasonable" fee is implied); McGill v. Cockrell, 88 Fla. 54, 58, 101 So. 199, 201 (1924)(where a contract fixes no definite sum to be paid for services, "a reasonable sum is presumed by law to have been contemplated by the parties")).
Based on Payne and the authority cited therein, we hold that appellant in this case stated a cause of action for breach of the implied covenants of reasonableness, good faith, and fair dealing. Since the prices to be charged by the facility were not expressly stated within the four corners of the contract, a reasonable fee was implied, and appellant was not foreclosed from bringing an action based on Manor Care's breach of this implied covenant. Accordingly, we reverse the trial court's dismissal of count I.

DISMISSAL OF COUNT II

MONEY HAD AND RECEIVED
In this count, sounding in common law money had and received, appellant alleged that she had no meaningful choice in determining which items or services would be provided or what the charges would be for any of the items or services, and that:
53. As a consequence of Manor Care's imposing unreasonable, unlawful and excessive charges and of Manor Care's having taken undue advantage of the Class Members as alleged above, Manor Care has received and holds more money than in fairness and equity is just, and this money should be returned to Plaintiff and Others.
54. Plaintiff and Others who have paid or caused to be paid, in full or in part, Manor Care's bills are entitled to a refund equal to the amount of the overcharges, plus interest thereon.
Below appellee contended, and the trial court agreed, that appellant's claim for money had and received was barred because she voluntarily paid the bills submitted by appellee. The court rejected appellant's argument that she paid the fee under duress since the contract provided that non-payment would result in the contract's termination.
The voluntary payment defense has been defined as follows:
where one makes a payment of any sum under a claim of right with knowledge of the facts such payment is voluntary and cannot be recovered.
City of Miami v. Keton, 115 So.2d 547, 551 (Fla.1959). When a payment is made without knowledge of the facts, however, it is not voluntary. Similarly, when "money is obtained through `imposition', express or implied, or extortion or oppression, or an undue advantage is taken of the plaintiff's situation," the payment is not voluntary and does not bar an action for money had and received. See Cullen v. Seaboard Air Line R.R. Co., 63 Fla. 122, 58 So. 182, 184 (Fla. 1912)(an action for imposition is an action for money had and received to recover "excess" payments coercively exacted from a plaintiff where only a reasonable compensation is allowable).
The Florida Supreme Court has held that charging an unreasonable price under certain *930 circumstances constitutes an imposition for purposes of an action on an implied contract to recover money. See Southern States Power Co. v. Ivey, 118 Fla. 756, 760, 160 So. 46, 47 (1935). The court reasoned that:
Where a person taking advantage of his position, or the circumstances in which another is placed, exacts a greater price for services rendered than is fair and reasonable, where such a compensation only is allowable, the exaction of the unreasonable price for the service rendered may be said to be an imposition.... Such an imposition would support an action of assumpsit for money received....
Southern States Power Co., 160 So. at 47.
Recently, in Hall v. Humana Hospital Daytona Beach, 686 So.2d 653 (Fla. 5th DCA 1996), the court affirmed the grant of summary judgment in a case in which excessive medical charges were alleged based on the fact that payment had voluntarily been made. The court held that in order to defeat the voluntary payment defense, the plaintiff was required, and failed, to prove that the coercion continued through the time of payment. Id. at 657.
In this case, appellant alleged that Manor Care's charges exceeded that which was reasonable and that appellant was forced to pay the charges for fear that her husband would be put out of the facility. Based on the parties' agreement, we hold this to be sufficient for the purpose of stating a cause of action for money had and received in an initial pleading, and reverse the trial court's dismissal of count II to allow appellant the opportunity to prove that the Hall requirements have been met.

COUNT III

COMMON LAW UNJUST ENRICHMENT
Appellant's complaint alleges that Manor Care has been unjustly enriched by retaining payments which exceed the reasonable costs of goods and services rendered. The basis of the trial court's dismissal of appellant's count for unjust enrichment (count III) was that the complaint also brings a count for breach of contract, and these counts are inconsistent.
Rule 1.110(g), Florida Rules of Civil Procedure (1997) states the following:
A pleader may set up in the same action as many claims or causes of action or defenses in the same right as the pleader has, and claims for relief may be stated in the alternative if separate items make up the cause of action, or if [two] or more causes of action are joined. A party may also set forth [two] or more statements of a claim or defense alternatively, either in [one] count or defense or in separate counts or defenses. When [two] or more statements are made in the alternative and [one] of them, if made independently, would be sufficient, the pleading is not made insufficient by the insufficiency of [one] or more of the alternative statements. A party may also state as many separate claims or defenses as that party has, regardless of consistency and whether based on legal or equitable grounds or both. All pleadings shall be construed so as to do substantial justice.
The court in Lowry v. Lowry, 463 So.2d 540, 541 (Fla. 2d DCA 1985)(citing 66 Am. Jur.2d, Restitution and Implied Contracts § 3 (1973)), spoke of unjust enrichment in the following terms:
The phrase "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.
The elements of a cause of action for unjust enrichment are (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant *931 voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. See Hillman Constr. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994). As we pointed out in Hillman, it is important to remember that, at this point in the proceedings, we do not consider the ultimate merits of appellant's claim, but merely whether she can plead it. See id. at 577. "Complaints should not be dismissed for failure to state a cause of action unless the movant can establish beyond any doubt that the claimant could prove no set of facts whatever in support of his claim." See id. (citing Martin v. Highway Equip. Supply Co., 172 So.2d 246 (Fla. 2d DCA 1965)).
In the present case, appellant has alleged overcharging and overreaching by Manor Care, which, if proven, would equitably require the return of excess payments made. Considering the bare allegations of the complaint, and not what defenses might be pleaded in response to this claim or what the ultimate merits are, we hold that appellant has sufficiently stated a cause of action for unjust enrichment, and therefore reverse the trial court's dismissal of count III.

COUNT VI

BREACH OF FIDUCIARY DUTY
Appellant's complaint alleged the following in support of her claim of breach of fiduciary duty:
69. Residents of Manor Care nursing homes who are or were particularly dependent for their daily care upon Manor Care, its employees, and others, and their guarantors, reposed in defendants a special confidence which, among other things, by admitting the residents and by reserving to themselves the right to determine the level of care and the Goods and Services that would be provided to the residents, defendants accepted.
70. Such residents, and their guarantors, reasonably and justifiably relied upon the supposed superior knowledge, skill, and abilities of Manor Care, its employees, and others that defendants held themselves out to have. Such residents, and their guarantors, also relied upon defendants to provide care for those who, because of their age or physical or mental condition, were not able to provide care for themselves.
71. By virtue of the commercial relationship in statutory and common law as well as the special relationship which developed between defendants and the residents of Manor Care nursing homes who were or are particularly dependent for their daily care upon Manor Care, its employees, and others, and their guarantors, defendants owed a fiduciary duty to Plaintiff and Others.
In dismissing appellant's count VI, the trial court stated:
Plaintiff's tort claims are not founded on conduct which resulted in personal injury or property damage. Further, these claims are based on Manor Care's alleged overcharges and failure to properly staff its nursing homes, the same conduct underlying plaintiff's breach of implied contract, unjust enrichment, and breach of nursing care contract claims. Thus, the economic loss rule articulated by the AFM court bars plaintiff's tort claims for negligent omissions and breach of fiduciary duty.
On appeal, Manor Care contends that dismissal of count VI was warranted since appellant's breach of fiduciary claim is "interwoven" with the contractual relationship between the parties. We disagree.
In Casa Clara Condominium Ass'n., Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244 (Fla.1993), the Florida Supreme Court discussed the economic loss doctrine as follows:
The rule is "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others."
Economic loss has been defined as "damages for inadequate value, costs of repair and replacement of the defective product, *932 or consequent loss of profits-without any claim of personal injury or damage to other property".... In other words, economic losses are "disappointed economic expectations," which are protected by contract law, rather than tort law.
See id. at 1246; see also AFM Corp. v. Southern Bell Tel. and Tel. Co., 515 So.2d 180 (Fla.1987) (the court held that without some conduct resulting in personal injury or property damage, plaintiffs cannot sustain an independent tort claim to recover economic damages arising out of a breach of contract.) See id. at 181.
This court has recently recognized "fraud in the inducement" as an exception to the economic loss doctrine. See TGI Dev., Inc. v. CV Reit, Inc., 665 So.2d 366 (Fla. 4th DCA 1996), approved 689 So.2d 255 (Fla. 1997); see also HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 661 So.2d 1221 (Fla. 3d DCA 1995), approved, 685 So.2d 1238 (Fla. 1996). In approving the Third District Court of Appeals decision in HTP, Ltd., the supreme court recognized, however, that some fraudulent inducement claims are barred by the economic loss doctrine. See HTP, Ltd., 685 So.2d at 1239. The distinction between fraud in the inducement and other kinds of fraud is whether the fraud is extraneous to or interwoven with the breach of contract. Id. at 1240. When the misrepresentations are related to the breaching party's performance of the contract, they do not give rise to an independent cause of action in tort. Id; see also Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74, 78 (Fla. 3d DCA 1997)(Dismissal of complaint affirmed where economic loss rule barred plaintiffs' claim of fraudulent misrepresentation which was inseparable from the essence of the parties' agreement. Court held that the parties were limited to pursuing their rights in contract).
The effect of the economic loss rule on claims for breach of fiduciary duty was discussed in McCutcheon v. Kidder, Peabody & Co., Inc., 938 F.Supp. 820 (S.D.Fla.1996). In McCutcheon, the court affirmed the dismissal of a complaint by an investor against his investment manager holding that the latter's fiduciary duty to recommend only suitable securities for purchase arose only as a consequence of the contract between the parties concerning the trade of securities. Id. at 822. In other words, the breach of fiduciary duty claim was dependent on the existence of the contract. Id. The court rejected the argument that the economic loss rule did not bar the claim because there was no provision in the contract specifically addressing the defendant's duty to render suitable advice. Id. at 823.
In this case, appellant alleged that
by virtue of the commercial relationship in statutory and common law as well as the special relationship which developed between defendants and the residents of Manor Care nursing homes who were or are particularly dependent for their daily care upon Manor Care, its employees, and others, and their guarantors, defendants owed a fiduciary duty to plaintiff and others.
(emphasis added). We hold that, based on these allegations, appellant's breach of fiduciary duty claim is not barred by the economic loss doctrine. Since she properly alleged a fiduciary duty between Manor Care and it residents, which arose out of a special relationship independent of the contract, and a breach of same, it was error for the trial court to dismiss count VI.

COUNT VII

VIOLATIONS OF FLORIDA STATUTES SECTIONS 400.022 AND 400.165
Appellant's count VII was brought as personal representative of the Estate of Herman Greenfield, and on behalf of all others similarly situated. In this count, appellant alleged that Manor Care violated section 400.022(1)(e), Florida Statutes (1993), by not advising appellant or residents orally or in writing at the time of admission, of the charges for goods and services not covered by Manor Care's per diem rates.
Appellant further alleged the following:
76. Manor Care violated Section 400.165(2)(d), Florida Statutes, in the following respects:

*933 a. its bills did not specifically describe the physical, occupational, or other therapies provided to patients; and
b. its bills did not identify therapy treatment as to date, type and length of treatment.
77. Manor Care violated Section 400.165(6), Florida Statutes, because it increased the prices billed to Plaintiffs and Others for goods and services provided by third parties above and beyond handling charges and charges "actually incurred as an item of expense," and did not separately set forth the amounts of service or handling charges in the bills rendered by Manor Care.
Section 400.023(1), Florida Statutes (1993) gives residents of nursing homes the right to bring a legal action to enforce those rights which are specifically enumerated in section 400.022, if they are violated. See generally Beverly Enterprises-Florida, Inc. v. Spilman, 661 So.2d 867 (Fla. 5th DCA 1995), rev. denied, 668 So.2d 602 (Fla.1996). Among those rights is
[t]he right to be fully informed, in writing and orally, prior to or at the time of admission and during his stay, of services available in the facility and of related charges for such services, including any charges for services not covered under Title XVIII or Title XIX of the Social Security Act or not covered by the basic per diem rates and of bed reservation and refund policies of the facility.
§ 400.022(1)(i), Fla. Stat. (1993); see also § 400.165, Fla. Stat. (1993)(governs the method in which nursing homes must bill residents and the form which those statements should follow). The following language from section 400.023 is relevant to our consideration of the trial court's dismissal of this count:
(1) Any resident whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any licensee responsible for the violation. The action may be brought by the resident or his guardian, by a person or organization acting on behalf of a resident with the consent of the resident or his guardian, or by the personal representative of the estate of a deceased resident when the cause of death resulted from the deprivation or infringement of the decedent's rights.

(Emphasis added).
The trial court dismissed count VII on the basis that appellant did not allege that her husband's death resulted from the deprivation or infringement of his rights under Chapter 400. We do not agree with that interpretation of the statute.
On one level, section 400.023 lends itself to the interpretation espoused by the trial court, that is, that suits by personal representatives on behalf of deceased residents are allowed only when the nursing home's alleged negligence caused the resident's death. On the other hand, we do not think that such an interpretation was intended by the Legislature in light of section 46.021, Florida Statutes (1993), which provides that "no cause of action dies with the person." To construe section 400.023 as foreclosing all causes of actions for nursing home negligence which does not cause the resident's death is to nullify section 46.021. See generally Beverly Enterprises-Florida, Inc. v. Estate of Maggiacomo, 651 So.2d 816 (Fla. 2d DCA), quashed on other grounds, 661 So.2d 1215 (Fla.1995)(personal representative sued on behalf of deceased resident under section 400.023 for deprivation of nursing home rights for theft of diamond ring which was allegedly forced from finger of resident causing bruises; resident died of unrelated causes); Arthur v. Unicare Facilities, Inc., 602 So.2d 596 (Fla. 2d DCA), rev. denied, 613 So.2d 4 (Fla.1992)(when death results from complained-of injuries, The Wrongful Death Act applies; when death results from an independent cause, claim is preserved by section 46.021, the survival of actions statute). As such, we hold that section 400.023, Florida Statutes (1993), must be read in pari materia with section 46.021, Florida Statutes (1993) in order to reach a logical result. See generally Inciarrano v. State, 447 So.2d 386 (Fla. 4th DCA 1984), quashed on other grounds, 473 So.2d 1272 (Fla.1985)(the Legislature is presumed to know the state of the law in passing statutes and consequently the legislation is to be construed on the premise that the particular statute in question is to be *934 applied relative to other statutes affecting the same subject matter). We therefore reverse the trial court's dismissal of appellant's statutory cause of action, and remand for further proceedings consistent with this opinion.
Based on the foregoing, we affirm in part and reverse in part with directions to the trial court.
AFFIRMED IN PART; REVERSED IN PART WITH DIRECTIONS.
PARIENTE, BARBARA J., Associate Judge, concurs.
WARNER, J., concurs in part and dissents in part with opinion.
WARNER, Judge, concurring in part and dissenting in part.
I dissent as to the majority's position that appellant has alleged a cause of action for breach of fiduciary duty independent of the contractual relationship between the nursing home residents. The contract between the parties was for the daily care of the residents. This does not constitute a special relationship independent of the contract; it is the purpose of the contract. The allegations of the damages incurred are the same for all counts, namely the overcharging for goods and services. These are economic damages recoverable on the contract. See Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244 (Fla.1993).
I also disagree with the majority's interpretation of section 400.023(1). The rights protected under section 400.022 are rights that are largely personal to the resident of the facility, such as the right to religious liberty, see § 400.022(1)(a), the right to organize and participate in groups in the facility, see § 400.022(1)(e), and the right to manage one's personal affairs, see § 400.022(1)(h) to name a few. The resident also has the right to adequate medical care and proper treatment, see § 400.022(1)(l) and under section 400.023(1), if the violation of these rights results in a death then, the personal representative of the estate of the deceased resident has a cause of action. However, as to the other personal rights, I can conceive of valid policy reasons why the legislature would not want such actions to survive, as post-death vindication would not bring any personal satisfaction to the resident. Considering the fact that attorney's fees are available for successful suits proving infringements of these statutory rights, it may have been part of the legislative bargain in passing the resident's bill of rights to limit actions to the lifetime of the patient, other than those alleging that the violation of the rights resulted in the death of the resident.
Moreover, section 400.023(1) was enacted long after section 46.021 and I do not see how the two can be harmonized, nor does the majority opinion give any rationale to do so. As a general rule of statutory construction, a special statute controls over a general statute. See McKendry v. State, 641 So.2d 45 (Fla.1994). Therefore, I would hold that section 400.023(1) controls. I would affirm the dismissal of the statutory cause of action.
In all other matters, I concur with the majority opinion.